## UNITED STATES DISTRICT COURT
## NORHTERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THOMAS GEBKA, *an individual, on behalf of himself and all others similarly situated*, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE ALLSTATE CORPORATION, a )<br>Delaware limited liability company, )<br>)<br>Defendant. )<br>)<br>) | CASE NO: |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.  Plaintiff Thomas Gebka brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

2.  In violation of the TCPA, Allstate, or a third-party hired acting on their behalf, commissioned telemarketing calls to Mr. Gebka's cellular telephone number for the purposes of advertising their goods and services without express consent which is prohibited by the TCPA.

3.  Gebka never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers en masse, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal automated telemarketing calls from or on behalf of the Defendants.

11

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

5. This is an action for injunctive relief, statutory damages, and actual damages based on these unlawful automatically dialed telemarketing calls (commonly referred to as "robocalls") in violation of the federal TCPA.

## THE PARTIES

6. Gebka is an individual residing in Hendersonville TN.

7. The Allstate Corporation ("Allstate") is a Delaware limited liability company with its corporate Headquarters located in Northbrook Illinois, which is located within this district.

## JURISDICTION AND VENUE

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).

9. The events described herein relate to unlawful telemarketing calls to Gebka's cellular telephone number.

10. Venue is appropriate in this district pursuant to 47 U.S.C. § 227(b)(3) as Defendant is headquartered and does business within this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11

12. The TCPA makes it unlawful to make any telemarketing call using an automatic telephone dialing system to cellular telephone line without express written consent. See 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

## DEFENDANT'S UNLAWFUL CONDUCT

14. Plaintiff restates the above and foregoing as though fully restated herein.

15. Plaintiff's telephone number was registered on the national Do Not Call list for more than 30 days from the calls at issue.

16. On August 8, 2019 Plaintiff received a telephone call on his cellular telephone number from caller ID 708-555-0000.

17. No company name was transmitted via Caller ID.

18. At the outset of the call, after a brief pause of dead air, a representative asked Plaintiff if he was interested in an insurance quote from Allstate. Plaintiff terminated the call.

19. A few hours later, on August 8, 2019, Plaintiff received another telephone call on his cellular telephone from caller ID 325-555-0000.

20. No caller ID name was transmitted.

21. After a brief pause of dead air, Plaintiff was again asked if he was interested in an insurance quote from Allstate.

22. After confirming Plaintiff's address and phone number, the calling representative transferred Plaintiff to an Allstate agent located in Alsip IL. Allstate then emailed Plaintiff a quote for insurance

23. On August 8, 2019, Plaintiff received yet another telephone call from an individual asking if he was interested in an Allstate insurance quote.

24. On September 18, 2019 Plaintiff received another telephone call on his cellular telephone from caller ID number 630-718-1821.

25. After a brief pause of dead air, Plaintiff was again asked if he was interested in an insurance quote from Allstate.

26. At no time did Gebka provide express written consent to Allstate, or anyone else, to initiate automated telephone solicitations to him.

27. The initial pause of dead air at the start of the August 8 and September 18 calls indicates that the calls were automatically initiated, without human intervention, from a machine that has the capacity to store or produce telephone numbers to be called and to dial such numbers.

### **ALLSTATE'S LIABILITY**

28. The Federal Communication Commission has instructed that sellers such as Allstate may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands

11

of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

29. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

30. In fact, for more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

31. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

32. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

33. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

11

34. direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

35. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> *[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.*

FCC Rcd at 6592 (¶ 46).

## CLASS ALLEGATIONS

36. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

37. The classes of persons Plaintiff proposes to represent are tentatively defined as:

**Cell Phone Class:**

(1) All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to the person's cellular telephone number; (d) using an automatic telephone dialing system; (e) without prior express consent; and (f) at any time in the period that begins four years before the date of the filing of this

11

Complaint to trial.

**<u>Do Not Call Class:</u>**

(1) All persons in the United States (2) who Defendant or some person on Defendant's behalf (3) initiated more than one telephone solicitations (4) to a telephone number registered with the National Do Not Call Registry (5) where the subject telephone number had been registered more than thirty-one days prior to the initiation of the telephone solicitations (6) within any twelve month period within four years prior to the filing of this action.

38. Upon information and belief, the members of the classes received one or more automated calls for telemarketing purposes without having given prior express consent.

39. Upon information and belief, the members of the class received one or more telemarketing calls that were initiated without transmitting the caller's name and/or without transmitting a valid telephone number

40. The classes as defined above are identifiable through phone records and phone number databases.

41. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

42. Plaintiff is a member of the proposed classes.

43. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

Whether Defendant violated the TCPA by using an automated telephone dialing system to call the proposed class members without their express consent;

11

Whether calls to the class were initiated without transmitting the caller's name and/or without transmitting a valid telephone number;

Whether Defendant's calls constitute telephone solicitations;

Whether the Plaintiff and the class members are entitled to statutory damages and/or injunctive relief because of Defendant's actions.

44. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

45. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions.

46. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

47. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

48. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

49. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

50. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the putative Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct.

51. The identity of the Class is, on information and belief, readily identifiable from the records of Defendant and/or any affiliated marketers, and the National Do Not Call Registry.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), RESTRICTIONS ON USE OF AUTOMATED TELEPHONE EQUIPMENT, 47 U.S.C. § 227(b): INITIATING AUTOMATICALLY DIALED TELEMARKETING CALLS

52. Gebka and the class restate and re-allege the proceeding paragraphs as if fully set forth herein.

53. Defendant's automated calls described herein were made for telemarketing purposes without Gebka or the class' prior express written consent, and therefore constitute violations of 47 CFR § 64.1200(a)(3) as promulgated under 47 USC § 227(b) for each such call.

54. Defendants' automated calls invaded Gebka's and the class' privacy and violated Gebka's and the class' legal rights under federal law to not be subjected to such unlawful and anonymous automated calls.

55. Gebka and the class are entitled as a matter of law to obtain an injunction

11

prohibiting Defendants from committing further violations of 47 CFR § 64.1200(a)(3) and the recovery of the greater of actual damages or $500.00 for each of the violations as prescribed under 47 USC § 227(b)(3).

56. The automated calls to Gabka's and the class' telephone numbers, and the acts and omissions as to those calls described herein were deliberate and conscious acts or omissions.

57. The automated calls to Gebka's telephone number and to the class were willful or knowing as those terms are defined in the Communications Act of 1934 and administered by the FCC. Therefore it is within the Court's discretion to award Gebka and the class up to three times the available statutory damages as prescribed under 47 USC § 227(b)(3).

## COUNT II
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"),RESTRICTIONS ON USE OF AUTOMATED TELEPHONE EQUIPMENT, 47 U.S.C. § 227(c)

58. Gebka re-alleges and incorporates the preceding allegations as if fully set forth herein.

59. It is a violation of the TCPA for any person or entity to initiate any telephone solicitation to a residential or wireless subscriber who has registered their telephone number with the National Do Not Call Registry.

60. The FCC's TCPA regulations make it unlawful to "initiate" telemarketing calls to phone numbers registered on the national Do Not Call Registry or without maintaining a list of persons who request not to receive calls. Interpreting the meaning of the word "initiate" in its TCPA regulations, the FCC has clarified that a "person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." In re Dish Network, LLC, 28 F.C.C. Rcd. 6574, 6582–83 (2013). The FCC's interpretation of its regulations implementing the

TCPA merits substantial deference. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (reviewing courts "must give substantial deference to an agency's interpretation of its own regulations"); see CE Design, Ltd. v. Prism Business Media, Inc., 606 F.3d 443, 450 (7th Cir. 2010).

61. Plaintiff and members of the putative Class have received more than one telephone call within a twelve (12) month period in violation of the regulations set forth in 47 C.F.R. 64.1200.

62. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

WHEREFORE, Plaintiff Thomas Gebka, on behalf of himself and the other members of the Classes, prays for the following relief:

    a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b. An injunction prohibiting Defendants from initiating telephone solicitations to persons who have registered their telephone numbers with the National Do Not Call Registry;

    c. An award of actual damages;

    d. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

    e. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

  f. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

  g. Such further and other relief the Court deems reasonable and just.

Dated: October 8, 2019

                Respectfully submitted,

                By: */s/ Keith J. Keogh*
                Keith J. Keogh
                One of Plaintiff's attorneys