**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-06662 |
| v. | ) ) | Hon. Sharon J. Coleman |
| THE ALLSTATE CORPORATION a Delaware Corporation, | ) ) ) | Mag. Jeffrey I. Cummings |
| Defendant. | ) | |

**MOTION TO COMPEL ALLSTATE TO ANSWER INTERROGATORIES ABOUT
ITS CONSENT DEFENSE AND PRODUCE UNREDACTED CLASS DATA**

101449_4

Pursuant to Rule 37(a) and Local Rule 37.2, Plaintiff Thomas Gebka respectfully requests that the Court order Defendant The Allstate Corporation ("Allstate") to answer Interrogatories 3 and 5 about Allstate's consent defense, and produce unredacted documents identifying class members and dates they were called in response to Document Requests 6, 7, 10, 11 and 13, because this discovery is relevant to the merits and the Rule 23 requirements for class certification.

## INTRODUCTION

This is a class action alleging Allstate engaged in a national telemarketing campaign to advertise and promote its insurance via unsolicited robocalls to persons who had no prior relationship with Allstate. *See Class Action Compl.* ¶¶ 2-4, 14-27 (ECF No. 1) (hereinafter, "*Compl.*"). Plaintiff, on behalf of himself and all others similarly situated, claims Allstate is liable for those violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the regulations prescribed thereunder, 47 C.F.R. § 64.1200, in that the calls Allstate's agencies commissioned with its authorization were placed to cellular telephones without consent and were telemarketing calls to persons on the National Do Not Call List. *See Compl.* ¶¶ 52-62. All of the calls at issue were made by Richardson Marketing Group LLC ("RMG") on behalf of Allstate. After a consumer answers these calls, they are transferred to a local Allstate Agency.

Plaintiff seeks to represent two nationwide classes of persons who received calls marketing Allstate's insurance products. *Compl.* ¶ 37. Thus, Plaintiff sought discovery as to Allstate's fourth affirmative defense which claims "Plaintiff and/or members of the putative class consented to receiving the telephone calls alleged in the Complaint." ECF No. 20 at 18 (¶ 4).

Yet Allstate refuses to fully-answer the discovery seeking information underlying that conclusory defense, such as whether or not Allstate maintains the defense as to each class, the names and phone numbers of people who Allstate claims consented, and the evidentiary basis

1

(including supporting documents) for any such contention. Because Allstate is asserting a consent defense under the TCPA, it must produce evidence of any purported consent. *See, e.g.*, *Whiteamire Clinic, P.A., Inc. v. Quill Corporation*, 2013 U.S. Dist. LEXIS 136819, *9 (N.D. Ill. Sept. 24, 2013) (compelling TCPA class defendant to comply with discovery about consent or permission, holding "the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified"). Allstate should be ordered to either fully-answer these interrogatories or withdraw its consent defense.[1]

In addition, the discovery Allstate did produce (three months late) is deficient in that it contains hundreds of heavily-redacted communications between RMG and one Allstate agency, and no communications at all with the other *eighty-four* Allstate agencies who used RMG.

The redacted documents are lead confirmation emails from RMG regarding leads relating to the Brian Saving Allstate Agency that identify class members and confirm the calls.[2] This information should not be redacted from the emails produced because it identifies class members who were telemarketed as well as class members who subsequently became Allstate policyholders as a result of the illegal calls.

Moreover, RMG produced agreements demonstrating there are eighty-four additional Allstate agencies for whom RMG made telemarketing calls on behalf of Allstate, just like the Saving Allstate Agency. The lead confirmation emails to those other eighty-four Allstate agencies likewise identify members of the class Plaintiff seeks to represent.

---

[1] The undersigned and counsel for Allstate conferred about these deficiencies during a lengthy meet and confer call on March 20, 2020, but were unable to resolve the issues. Allstate agreed to amend its initial deficient answers to these interrogatories but noted Plaintiff was not going to like the amended answers. Sure enough, the amended answers contain the same deficiencies as the originals, plus new ones.

[2] Third party documents produced in response to Plaintiff's subpoenas demonstrate that the redacted information is the lead (*i.e.* class member) and call information. *See infra* at 10-11.

2

This information is plainly relevant and necessary in order for Plaintiff to prove the number of calls, and it is relevant to agency and will be used to satisfy the requirements of Rule 23 as well. *See, e.g.*, *Sewell v. D'Alessandro & Woodyard, Inc.*, 2011 U.S. Dist. LEXIS 38664, at *8 (M.D. Fla. Mar. 30, 2011) (compelling class data in TCPA case because "[t]he purpose of class discovery is to determine who constitutes the members of the class"). Allstate should be ordered to immediately produce all of these documents in unredacted form.[3]

## TELEMARKETING CALLS AND CONFIRMATION EMAILS AT ISSUE

At the behest of Allstate, Allstate's agencies, such as the Brian Saving Allstate Agency, engaged third party vendors, such as RMG, to make telemarketing calls to generate business "leads." *See Compl.* ¶ 2; *Feb. 6, 2019 Meeting Invite*, attached as **Exhibit 1**; *Lead Provision Agreement* at 1, attached as **Exhibit 2**; *July 15, 2019 Email*, attached as **Exhibit 3**.

Allstate, through its Field Sales Leader Matt Maloney, encouraged and authorized Allstate agencies to utilize RMG's services, and not only arranged meetings for RMG to pitch its services to the agencies, but was involved in obtaining special group pricing for the agencies as well. *See Ex. 1* (Allstate Field Sales Leader's invitation to over twenty Allstate agencies, including Brian Saving, to attend Feb. 6, 2019 meeting in which RMG pitched its lead generation services); *Ex. 2* at 1 (Feb. 14, 2019 agreement Brian Saving Allstate Agency entered into with RMG after attending meeting arranged by Field Sales Leader); *Ex. 3* (reflecting Allstate's knowledge and involvement in RMG's group pricing for Allstate agencies). In response to Plaintiff's subpoena, RMG produced written agreements with eighty-five (85) Allstate agencies who bought RMG "leads," but produced only a few of the confirmation emails at issue here.

---

[3] The undersigned and counsel for Allstate were unable to reach an accord on these issues despite conferring about them during calls on June 30 and July 7, 2020, and via email on July 20, 2020 and thereafter.

Along that line, RMG regularly sent the Allstate agencies confirmation emails and spreadsheets identifying the name, phone number, and other information such as call date for each "lead" who was called, which records those parties used to verify RMG was performing its end of the bargain. Some of the lead-confirmation emails looked like this:

Below are the live transfers that you have received from us up to today. I will get todays tonight or Monday morning.
Dave

| [First Name] | [Last Name] | [Phone Number] | [Zip Code] | [State] |
|---|---|---|---|---|
| Lxxxx | Jxxxxxx | 618-xxx-xxxx | 62930 | IL |

*Mar. 1, 2019 Email* at 1 (email from RMG Vice President Dave Cafeo to the Brian Saving Allstate Agency, produced by Mr. Saving), attached as **Exhibit 4**.

Other times, the lead-confirmation emails attached a spreadsheet identifying the leads and dates of the telemarketing calls to them. *See May 28, 2019 Email* (email from RMG President and CEO Deryck Richardson to the Saving Allstate Agency, produced by Mr. Saving, attaching Excel spreadsheet of leads), attached as **Exhibit 5**.

Allstate, as principal, clearly has access to the lead confirmation emails sent to its agents' Allstate email addresses. *See, e.g.*, *id.* at 1 (to bsaving@allstate.com). Indeed, it already produced redacted versions of the lead emails RMG sent to the Saving Allstate Agency. *See infra* at 11 (discussing Allstate's production of redacted version of that same lead email). Yet, Allstate has not produced any emails relating to the other agencies, in an artificial attempt to limit the class.

## **ARGUMENT**

## I. **Allstate Should be Compelled to Fully Answer Interrogatories 3 and 5, Which are Relevant to the Merits of Its "Consent" Defense and Class Certification**

Interrogatory 3 seeks the information underlying Allstate's consent defense to the TCPA claims asserted on behalf of the Cellphone Class (which class is described in Interrogatory No. 2):

101449_4

3. Do you contend that Plaintiff or any person responsive to Interrogatory # 2 signed an agreement containing a clear and conspicuous disclosure informing the person that: (A) by signing the agreement, he or she authorizes Allstate to deliver or cause to be delivered telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) he or she is not required to sign the agreement or agree to enter into such an agreement as a condition of purchasing any property, goods, or services? If so, then please identify <u>each</u> such person, and with respect to <u>each</u> such person, please identify the applicable telephone number, explain with specificity the basis for such contention, and specifically identify all evidence that supports your contention including the Bates numbers of all documentary evidence.

<u>RESPONSE</u>: Allstate incorporates its responses and objections to Interrogatory No. 2 as if fully stated herein. Allstate objects to this Interrogatory as overbroad and unduly burdensome because the Interrogatory is not limited to the allegations, parties, scope, or subject matter at issue in this litigation. Allstate also objects to this Interrogatory to the extent that it calls for Allstate to respond for third parties. Allstate further objects to this Interrogatory on the grounds that it is compound and vague, including because it incorporates a different Interrogatory, and because the phrase "Plaintiff or any person responsive to Interrogatory # 2" is nonsensical. Allstate interprets that to mean "any person identified in response to Interrogatory No. 2." Subject to and without waiving these objections, Allstate responds that it did not make any telephone calls to (630) 779-2629. Allstate further responds that it is without knowledge as to the identity of the person or entity that allegedly called (630) 779-2629 during the date range in question or whether a dialing system was used to place the alleged call(s). Allstate does not have information responsive to this Interrogatory as written.

*Answer to Interrogs.*, No. 3, attached as **Exhibit 6**.

Similarly, Interrogatory 5 sought the same information about Allstate's consent defense to

the claims asserted on behalf of the Do-Not-Call Class (which class is described in Interrogatory

No. 4). *Id.* at No. 5. Allstate responded with the same boilerplate objections and non-answer, this

time adding "Allstate responds that it did not identify any persons in response to Interrogatory No.

4." *Id.*; *compare id.* at No. 3 *with id.* at No. 5.

Interrogatories 3 and 5 require Allstate to clearly state, as an initial matter, whether or not

Allstate contends that Plaintiff or anyone else in the applicable class provided consent. In addition,

if Allstate does so contend, then to fully-answer either interrogatory, Allstate must also either: (1)

5

identify each person who allegedly consented, and with respect to each such person, identify his/her phone number, explain with specificity the basis for the contention, and identify all evidence supporting it; **or** (2) state that Allstate cannot identify anyone who consented to receive telemarketing calls about Allstate insurance or any evidence supporting its consent defense.

Allstate's supplemental answers to Interrogatories 3 and 5 do none of those things.  Indeed, it is impossible to decipher from either "answer" whether Allstate even contends Plaintiff or anyone else in the applicable class provided consent.  Both answers are likewise devoid of the additional information sought regarding support for Allstate's consent defense, they identify no responsive documents, and they do not state under oath that Allstate cannot identify any specific person it had prior express consent to call or documents supporting its defense.

Thus, Allstate has failed to even partially answer these interrogatories, let alone fully answer them as required.  *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must . . . be answered . . . fully in writing under oath."); Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete . . . answer . . . must be treated as a failure to . . . answer"); *see also Hanley v. Como Inn, Inc.*, 2003 U.S. Dist. LEXIS 7130, at *12 (N.D. Ill. Apr. 25, 2003) ("'the duty to fully answer implies a duty to make reasonable efforts to obtain information within the knowledge and possession of others'").  As one court explained in what could have very-well been written about Allstate's answers here:

> The lengthy narrative proffered by GMRS largely fails to address the interrogatory posed by Plaintiffs. That interrogatory requires identification of all campaigns for which GMRS obtained prior express consent in the same manner it obtained consent to call the Plaintiffs. GMRS does not identify any such campaigns. Nor did GMRS state in its sworn response that it did not obtain "prior express consent" concerning the pertinent campaigns, thereby obviating the need for identification under the language of the interrogatory. Instead, GMRS simply describes . . . not what the interrogatory requested. The information requested is reasonably calculated to elicit information bearing on class certification issues such as commonality, typicality, and adequacy of the class representatives.

*Martin v. Global Mktg. Research Servs.*, 2015 U.S. Dist. LEXIS 140530, at *7-8 (M.D. Fla. Oct.

15, 2015) (compelling consent discovery from TCPA class defendant).

Allstate's claim that "Allstate does not have information responsive to" these interrogatories is plainly false. Interrogatories 3 and 5 seek information from *Allstate* about *Allstate's* contentions underlying *Allstate's* consent defense which *Allstate* asserted in this case. By definition, Allstate knows whether it maintains a particular contention and knows its basis, if any, for maintaining the contention. Allstate's claim otherwise suggests bad faith. So does its objection each interrogatory "calls for Allstate to respond for third parties," as the interrogatories clearly seek information from Allstate about *its own* prior express consent defense.

Equally inadequate is Allstate's objection to the phrase "any person responsive to Interrogatory #2[/]#4," and interpretation and use of that phrase "to mean 'any person [Allstate] identified in response to'" the interrogatory. Allstate's interpretation materially-alters the subject of each interrogatory, rendering the answer non-responsive. For example, Interrogatory 4 describes the criteria for membership in the Do-Not-Call Class, and the subject of Interrogatory 5 as written is "any person responsive to Interrogatory #4"—without regard to whether Allstate actually answered Interrogatory 4. Thus, Allstate's answer to Interrogatory 5 that "it did not identify any persons in response to Interrogatory No. 4" is simply not responsive to the question Plaintiff posed.

Tellingly, Allstate does not object that the information about consent is irrelevant. Nor could it. It is axiomatic that:

> [I]f the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely[.]

*Bellenger v. Accounts Receivable Mgmt.*, 2019 U.S. Dist. LEXIS 153672, *16-17 (S.D. Fla. 2019) (granting motion to compel); *see also Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500, 504 (N.D. Ill. 2009) ("NCO must produce the requested class-wide documents and information relating to its

prior express consent defense.").

Where a TCPA class action defendant raises a consent defense, discovery about consent is *categorically* relevant to the merits of the defense as well as commonality and typicality under Rule 23. *See Henderson v. United Student Aid Funds, Inc.*, 2015 U.S. Dist. LEXIS 107342, *21-22 (S.D. Cal. July 28, 2015) ("Plaintiff's request for documents and information on prior express consent is relevant because USA Funds raised this defense in its answer and argues in its opposition that Plaintiff consented to the calls."); *Whiteamire*, 2013 U.S. Dist. LEXIS 136819 at *9; *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579, *5-6, *11 (N.D. Ill. June 13, 2011) (compelling answer to interrogatory 5 seeking all information and documents supporting consent, holding "this discovery is not only relevant to the merits of [defendant]'s affirmative defense, but it will demonstrate that each class member is like Plaintiff as to this defense").

In the TCPA class context, discovery about consent is also relevant to predominance under Rule 23. Absent a stipulation by Allstate that consent is not an individual issue preventing class certification, the Court should compel <u>complete</u> answers to Interrogatories 3 and 5 so Plaintiff can prove there is no individual issue of consent. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (reversing denial of class certification in TCPA case, reasoning, in part, court erred because "there exists a 'class-wide means of establishing the lack of consent'").

In addition, complete answers to these interrogatories seeking identification of each person Allstate claims consented are relevant and indispensable to class certification on the separate ground that the proposed Cellphone Class definition requires the absence of prior express consent. *See Compl.* ¶ 37. The consent discovery should be compelled for this reason as well. *See Global Mktg.*, 2015 U.S. Dist. LEXIS 140530 at *9-11 (compelling TCPA defendant to provide information responsive to interrogatory language which tracked proposed class definition, holding

8

"[t]he requested information is plainly relevant to class certification" because it "is probative of class membership," among other things).

Therefore, in sum, Allstate should be compelled to fully-answer Interrogatories 3 and 5, either by providing all information sought, or by stating under oath that it cannot identify any specific person it had prior express consent to call and withdrawing its consent defense. *See, e.g.*, *Bureau of Collection*, 2011 U.S. Dist. LEXIS 157579 at *10 ("If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.").

Any argument that Interrogatories 3 or 5 are premature should be rejected for several reasons. First, Allstate did not object to either interrogatory on that ground. Thus, any such objections "are waived." *See, e.g.*, *In re Cook Med., Inc.*, 2017 U.S. Dist. LEXIS 149915, *5 (S.D. Ind. Sept. 15, 2017).

Second, Allstate's consent defense is one-sentence long and merely states that Plaintiff and the class members "consented" without providing *any* factual detail. Thus, discovery is necessary to identify the factual theory underlying this defense and the evidentiary bases, if any, for it. If Allstate is allowed to defer answering, then it would effectively enable Allstate to oppose class certification based on consent while at the same time denying Plaintiff discovery needed to test whether there is any basis for that opposition. Thus, the interrogatories must be answered now for them to serve their purpose. *See Bureau of Collection*, 2011 U.S. Dist. LEXIS 157579 at *11 ("the Court rejects [defendant]'s argument that this discovery should be postponed until after the disposition of the class certification motion"); *Bellenger*, 2019 U.S. Dist. LEXIS 153672 at *17 ("*[A]t this stage of the proceeding*, [defendant] must produce whatever evidence of prior express consent it will use to rebut [plaintiff's] attempt to establish predominance . . . so the issue can fully

9

be litigated during the class certification phase of this case.") (emphasis added).[4]

## II.    Allstate Should be Compelled to Produce Its *Unredacted* Communications with Richardson Marketing Group Because They Identify the Class Members and Confirm the Illegal Calls to Them

Allstate's agencies engaged third party vendors such as RMG to provide "leads."  The process entailed robo-calling a telephone number RMG or another third party obtained from the Internet in an effort to get the "lead" to agree to consider purchasing Allstate insurance.  The illegal telemarketing calls would either be live-transferred to an Allstate agency (a "live transfer lead") without ever ending the call, or the called party's contact information would be sent to an Allstate agency for a callback (a "call verified lead").

For both types of "leads," RMG regularly sent Allstate's agencies confirmation emails and spreadsheets containing the name and phone number for each "lead" who was robocalled on behalf of Allstate.  *See Ex. 4* at 1 (email from RMG to Saving Agency, produced by Mr. Saving, listing "the live transfers that you have received from us up to [March 1, 2019]"); *Mar. 1, 2019 Email* at 1 (same, version produced by RMG), attached as **Exhibit 7**.  Again, Allstate clearly has access to its agencies' confirmation emails, as it already produced a subset of them in redacted form.

These lead confirmation emails and spreadsheets identify class members and directly or indirectly confirm the date of calls to them.  Yet Allstate withheld that substantive information by

---

[4] While Allstate objects that the interrogatories are "overbroad and unduly burdensome because [they are] not limited to the allegations, parties, scope, or subject matter at issue in this litigation," these objections lack merit.  Allstate does not explain how any of those conclusory assertions is true of Interrogatory No. 3 or 5.  Nor could it because, as detailed above, both interrogatories are tailored to the allegations of Allstate's consent defense and Plaintiff's class definitions.  Thus, these are boilerplate objections lacking specificity, which are waived and should be overruled.  *See Mauro v. Alldredge*, 2013 U.S. Dist. LEXIS 104239, at *9 (M.D. Fla. July 25, 2013) ("non-specific and conclusory objections . . . only serve to waste the time of counsel and the Court" and are "a nullity"); *Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) (objections "without elaboration . . . are not 'objections' at all");*Burkybile v. Mitsubishi Motors Corp.*, 2006 U.S. Dist. LEXIS 57892, *20 (N.D. Ill. 2006) (collecting cases rejecting "reflexive invocation of 'the same baseless, often abused litany' that … discovery is '…overly broad, unduly burdensome'").

10

spending *three months* redacting it from the emails sent to one Allstate agency that used RMG. *Compare Ex. 7 with Mar. 1, 2019 Email* at 2 (version of same Allstate produced with lead information redacted), attached as **Exhibit 8**. *Compare Ex. 5* (email from RMG to Saving Allstate Agency, produced by Mr. Saving, reflecting "Attachments: Saving Transfer Update 5.28.xlsx" and attaching Excel spreadsheet of leads) *and May 28, 2019 Email* (identical version produced by RMG), attached as **Exhibit 9** *with May 28, 2019 Email* (version of same Allstate produced in which ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████), attached as **Exhibit 10**. The sole exception is one row relating to Plaintiff in one lead confirmation email. *See Aug. 13, 2019 Lead Email* at 6, attached as **Exhibit 11**.[5] Similarly, Allstate has produced <u>no</u> version of the lead confirmation emails RMG sent to the *eight-four* (84) other Allstate agencies for whom it likewise made illegal Allstate telemarketing calls. These materials are responsive to Plaintiff's Document Requests 6-7, 10-11 and 13, as well as Interrogatories 2 and 4. *See Resp. to Doc. Reqs.*, Nos. 6-7, 10-11, 13, attached as **Exhibit 12**; *Ex. 6*, Nos. 2, 4.

Allstate refuses to produce unredacted versions of the records, claiming the emails and redacted information are "irrelevant." Allstate's claim is baseless. First, unredacted copies of this data are relevant to the merits and damages in that each entry represents a telemarking call to a class member that was made on behalf of Allstate to promote its insurance. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286-88 (N.D. Cal. 2015) (sanctioning TCPA defendant for concealing "records that would identify members of the class that received wrong number calls

---

[5] The exhibits hereto are exemplars of the redaction issues. Plaintiff can provide additional examples upon request. That Allstate designated these documents "confidential" under the protective order after having redacted all substantive information from them further suggests Allstate's designations are in bad faith.

from debt collectors").

Second, it is well-established that "discovery aimed at ascertaining a potential class list is proper." *Donnelly*, 263 F.R.D. at 504. That is precisely the purpose which would be served by unredacted copies of the lead confirmation emails Allstate refuses to produce, as the redacted information includes class members' names, phone numbers, and dates they were called in violation of the TCPA. *See Ex. 11* at 6 (██████████████████████████████████████ ██████████████); *accord Compl.* ¶¶ 19-22 (alleging August 8, 2019 telemarketing robocall to Plaintiff's cellphone number on behalf of Allstate that was live-transferred to Allstate).

Those data are relevant and necessary for Plaintiff to identify the recipients and number of calls, to prove there is an administratively feasible to identify class members, and to satisfy numerosity, commonality and typicality under Rule 23.

Therefore, the Court should compel Allstate to produce unredacted copies of all emails and attachments for all Allstate calls RMG made regardless of which Allstate agency was sent the particular email, as all of the emails relate to the class as all calls were made on behalf of Allstate and by RMG. *See In re Collecto, Inc.*, 2016 U.S. Dist. LEXIS 92619, *4-5 (D. Mass. 2016) (compelling TCPA class defendant to comply with discovery that "may indicate whether the plaintiffs can effectively use the call logs and FACS database to identify a universe of potential class members, which is an obvious prerequisite for any motion for class certification," holding the discovery was relevant and proportional); *Sewell*, 2011 U.S. Dist. LEXIS 38664 at *8 ("The purpose of class discovery is to determine who constitutes the members of the class. Interrogatory number 2 goes directly to the issue of who . . . may be members of the class. Thus, the Motion is granted with regards to interrogatory number 2."); *Donnelly*, 263 F.R.D. at 503-04 (TCPA case compelling production of "list of all persons . . . called on cellular telephones . . . using a predictive

dialer or automatic voice, since [the beginning of the class period]"); *see also Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 757 F.3d 540, 545 (6th Cir. 2014) (affirming class certification in TCPA case based on expert's analysis of fax records of third party who sent faxes, holding "the fax numbers are objective data satisfying the ascertainability requirement").[6]

The lead confirmation emails are, collectively, the equivalent of a call log or list of people called. "Outbound call lists are relevant to prove the merits of a TCPA claim, and also to establish the numerosity and commonality requirements of Rule 23." *See, e.g.*, *Bellenger*, 2019 U.S. Dist. LEXIS 153672 at *15. That is why courts universally hold that such class-wide call data is relevant and discoverable in TCPA class actions. *See Golan v. Veritas Entm't, LLC*, 2016 U.S. Dist. LEXIS 138103, *6 (E.D. Mo. 2016) (compelling "electronic list of all people illegally called by Defendants" because "the discovery requested is needed to determine issues of typicality and commonality in class certification"); *Henderson*, 2015 U.S. Dist. LEXIS 107342 at *21 (holding "request for the outbound call list is reasonably calculated to identify the recipients and number of calls made during the class period, and thus is relevant to establish FRCP 23 requirements of numerosity and commonality."); *Global Mktg.*, 2015 U.S. Dist. LEXIS 140530 at *11-13 (compelling TCPA defendant to comply with interrogatory 20 seeking class member names, telephone numbers, and dates called, holding the request "is targeted to elicit information potentially bearing on the ascertainability, numerosity, commonality, and typicality requirements of class certification," and "may also be relevant to the proper dissemination of class notice"); *Key*

---

[6] Allstate should be required to produce <u>all</u> of its emails involving any of the eighty-five Allstate agencies that used RMG (including attachments) to avoid a situation in which Allstate acts as biased arbiter of what constitutes a "lead confirmation" email. In Allstate's production thus far, Plaintiff is only aware of five redacted documents involving RMG that were not a lead confirmation email or spreadsheet attached thereto. Four such documents are emails about problems with the "leads," which are relevant for reasons similar to the confirmation emails. *See infra* at 15. The fifth document is the written agreement between the Brian Saving Allstate Agency and RMG—which Brian Saving and RMG both already produced with no redactions. Thus, Allstate has no legitimate basis for Allstate redacting the document.

13

*v. Integrity Surveillance Sols., Inc.*, 2015 U.S. Dist. LEXIS 163929, at \*8 (E.D. Mich. Dec. 8, 2015) (compelling TCPA defendant to provide "the requested information regarding the number of people called, the way [defendant] Integ and/or MyAutoBlast obtained their numbers, . . . and the type of data Integ and/or MyAutoBlast has regarding each person called to establish the ability of the Court to identify class members"); *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582 at \*6 (S.D. Cal. June 17, 2013) (holding "an outbound dial list in a TCPA action is relevant to class certification issues").

In addition, unredacted copies of these confirmations reflecting the phone numbers called are necessary to determine class membership, and are therefore relevant to class certification, on the independent ground that one of Plaintiff's class definitions requires that the phone number be registered on the National Do Not Call Registry. *See Compl.* ¶ 37.

Unless Allstate is willing to stipulate to class certification, it should be compelled to produce unredacted copies of all documents relevant to class certification issues—including the lead confirmation emails and related documents for all RMG calls regarding Allstate—as a matter of fundamental fairness. *See Bellenger*, 2019 U.S. Dist. LEXIS 153672 at \*13-14 ("As the Defendant has not stipulated as to the ascertainability of the class, the Court overrules the Defendant's objection to providing information that might assist the Plaintiff in demonstrating that an administratively feasible system exists to ascertain the class," holding "the 'Defendant cannot have it both ways.'"); *Whiteamire*, 2013 U.S. Dist. LEXIS 136819 at \*10 (granting motion to compel class discovery, holding "Quill may not deprive plaintiff of discovery related to the class while Quill continues to oppose class certification.").

Moreover, the emails and spreadsheets RMG sent Allstate identifying the "leads" are also relevant to the issue of agency, including Allstate's knowledge of the telemarketing calls on its

14

behalf. It is well-established that Allstate may be held vicariously liable for any calls RMG placed on its behalf. *See Bakov v. Consol. World Travel*, 2019 U.S. Dist. LEXIS 211399, * 15-21 (N.D. Ill. Dec. 9, 2019) (finding defendant vicariously liable for prerecorded telemarketing calls).[7] One way to establish agency is ratification, which "requires that a principal knows of the material facts involved in the act it is ratifying." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019). "'The fact that the principal had knowledge may be inferred' by circumstantial evidence," or evidence the principal "had knowledge of facts that would have led a reasonable person to investigate further, but . . . ratified without further investigation." *Id.* The unredacted lead confirmation emails from RMG are relevant to establish Allstate's knowledge.

For the same reasons, the other redacted emails Allstate agencies sent RMG about the wrong people or "leads" being called over-and-over again are likewise relevant to agency as it shows Allstate's knowledge of the telemarketing campaign, including knowledge the calls were going to people who did not consent. *See Aug. 11, 2019 Email* (identifying "one of the people [*i.e.* class members] we were transferred more than once"), attached as **Exhibit 13**; *Aug. 11, 2019 Email* (same, redacted version Allstate produced), attached as **Exhibit 14**.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order compelling Allstate to fully-answer Interrogatories 3 and 5 under oath, and to produce without any redaction (and in native format with all original metadata intact) all emails and attachments anyone from Richardson Marketing Group sent to or from any email address associated with any Allstate agency, and awarding Plaintiff such additional relief as the Court deems just and proper.

---

[7] *Accord Braver v. NorthStar Alarm Services, LLC*, 2019 U.S. Dist. LEXIS 118080, at *17 (W.D. Okla. July 16, 2019) (same) (citing *In re Joint Petition Filed by Dish Network, LLC, et al. for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574 (2013)); *Compressor Eng'g Corp. v. Mfrs. Fin. Corp.*, 746 F. App'x 460, 463 (6th Cir. 2018) (reversing summary judgment in TCPA class action, holding that defendant MFC may be liable for faxes sent by non-party B2B); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1254-55 (11th Cir. 2015)

Dated:  August 21, 2020

Respectfully Submitted,

THOMAS GEBKA, individually and on behalf of all others similarly situated, Plaintiffs

By:  /s/ Theodore H. Kuyper

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com
**_Attorneys for Plaintiff and the Putative Class_**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on August 21, 2020, I caused a copy of the foregoing ***Motion to Compel Allstate to Answer Interrogatories About Its Consent Defense and Produce Unredacted Class Data*** to be served upon all counsel of record via electronic filing using the CM/ECF system.


   /s/ Theodore H. Kuyper     

101449_4