**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS GEBKA, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | No: 19-cv-06662 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| THE ALLSTATE CORPORATION, a Delaware limited liability company, | ) ) | Magistrate Judge Jeffrey Cummings |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Thomas Gebka has filed a motion to compel complete responses to certain interrogatories and document requests that he issued to defendant The Allstate Corporation. (Dckt. #49).  For the reasons stated below, the Court grants in part and denies in part plaintiff's motion.

**I.      BACKGROUND**

Gebka brings this action against Allstate asserting claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, on behalf of himself and a putative class.  Gebka, whose cellular number is registered on the national do not call list, alleges that Allstate – or someone on its behalf[1] – violated the TCPA by making telemarketing calls to his cellular number without his prior express consent.  In particular, on August 8, 2019, Gebka received multiple telephone calls on his cellular phone from an unknown party and, upon his answering, there was "a brief pause of dead air" followed by a person inquiring whether he would be "interested in an

---

[1] Gebka alleges that Allstate is vicariously liable for the actions of entities with whom Allstate has contracted to make calls on its behalf.  *See, e.g., Bakov v. Consol. World Travel,* No. 15 C 2980, 2019 WL 6699188, at *4-6 (N.D.Ill. Dec. 9, 2019); Dckt. #52 at 16 (citing cases).

insurance quote from Allstate." (Dckt. #1, ¶¶16-23). Gebka also received a substantially similar

call on September 18, 2019. (*Id.*, ¶¶24-25). In its answer, Allstate denies that it placed any calls

to Gebka and it asserts that it lacks sufficient information to admit or deny whether telemarketing

calls were made to Gebka's cellular phone on its behalf. Nonetheless, Allstate asserts as an

affirmative defense that "[p]laintiff and/or members of the putative class consented to receiving

the telephone calls alleged in the Complaint." (Dckt. #20 at 18 ¶4).

Gebka issued his written discovery requests to Allstate, and he now brings this motion to

compel Allstate to provide sufficient answers and responses to his interrogatories Nos. 3 and 5,

and his document requests Nos. 6, 7, 10, 11 and 13. Allstate asserts that it expended significant

time, resources, and money to respond to Gebka's requests and denies that any of its answers or

responses are inadequate.

## II.    LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever

another party fails to respond to a discovery request, or when its response is insufficient.

Fed.R.Civ.P. 37(a). As the Seventh Circuit has held, a "district court exercises significant

discretion in ruling on a motion to compel" and it "is not limited to either compelling or not

compelling a discovery request." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 495-96 (7th Cir.

1996). Rather, the court "should independently determine the proper course of discovery based

upon the arguments of the parties" and "fashion a ruling appropriate for the circumstances of the

case." *Id.,* at 496; *Bejing Choice Elec. Tech Co. v. Contec Med. Sys. USA Inc.,* No. 18 C 0825,

2020 WL 1701861, at *3 (N.D.Ill. Apr. 8, 2020) (same).

Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Communications Corp.,* 365 F.Supp.3d

916, 924 (N.D.Ill. 2019) ("[r]elevance focuses on the claims and defenses in the case, not its general subject matter"). Discoverable information is not limited to evidence admissible at trial. Fed.R.Civ.P. 26(b)(1).

Nonetheless, "relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Motorola,* 365 F.Supp.3d at 924. In particular:

> the discovery sought must not only be relevant, but it must be 'proportional' to the needs of the case, 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.'

*Id., quoting Lechuga v. Magallanes,* No. MO:16-CV-00269-RAJ-DC, 2017 WL 8181556, at *1 (W.D.Tex. July 7, 2017). Once the moving party has made a preliminary showing that "the discovery it seeks is relevant to the case and proportional to the needs of the party," *Sanchez v. City of Fort Wayne,* No. 118CV00397HABSLC, 2019 WL 6696295, at *2 (N.D.Ind. Dec. 9, 2019) (citing cases), "[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Id.* (internal quotation marks omitted).

## III. DISCUSSION

### A. Allstate must provide revised and more complete answers to Gebka's interrogatories

Each interrogatory posed to a party "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3). To this end, it is well-settled that a responding party "must provide true, explicit, responsive, complete, and candid answers" to interrogatories. *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa. 1996); *Equal Rights Ctr. v. Post Properties, Inc.,* 246 F.R.D. 29, 32 (D.D.C. 2007) (same); *Brock v. Hooker Chem. & Plastics Corp.,* No. 83 C 8383, 1985 WL 2120, at *1 (N.D.Ill. July 24, 1985) (same). Finally, a

party objecting to an interrogatory bears the burden "to show why the interrogatory is improper."

*United States v. 58.16 Acres of Land, more or less in Clinton Cty., State of Ill.*, 66 F.R.D. 570,

572 (E.D.Ill. 1975).

Allstate has pled an affirmative defense which asserts that "Plaintiff and/or members of

the putative class consented to receiving the telephone calls alleged in the Complaint."  (Dckt.

#20 at 18).  Gebka argues that Allstate failed to fully answer interrogatories Nos. 3 and 5, which

seek to ascertain whether Allstate contends that Gebka or any members of the putative classes he

seeks to represent provided written consent to receive solicitation calls regarding Allstate.

Gebka seeks an order forcing Allstate to provide complete and responsive answers to these

interrogatories.  Although Allstate does not dispute the well-settled proposition that a defendant

has a duty to produce evidence supporting its affirmative defense of consent,[2] Allstate asserts

that the two interrogatories "[d]o not target [its] affirmative defense of consent" at all.  (Dckt.

#56 at 7).  Allstate further asserts that its answers are appropriate and reflect its lack of

responsive information to the inquiries that the interrogatories actually pose.

The text of interrogatories Nos. 3 and 5, along with interrogatories Nos. 2 and 4 which

are interconnected, and Allstate's answers is stated in full below:

---

[2] *See e.g., Bellenger v. Accounts Receivable Mgmt.,* No. 19-60205-CIV-DIMITROULEAS/SNOW, 2019 WL 4284070, at *6 (S.D.Fla. Sept. 10, 2019) ("if the Defendant intends to pursue its defense that it had the prior express consent of those called, then it must produce the evidence on which it will rely"); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D.Ill. Sept. 24, 2013) (finding that defendant cannot withhold discovery of evidence of prior consents and still be allowed to oppose class certification on this ground); *Webb v. Healthcare Revenue Recovery Grp. LLC*, No. C. 13-00737 RS, 2014 WL 325132, at *3–4 (N.D.Cal. Jan. 29, 2014) (requiring defendant to produce any documents showing it received prior express consent of which it "will use in opposing class certification"); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 504 (N.D.Ill. 2009), *objections overruled*, No. 09 C 2264, 2010 WL 308975 (N.D.Ill. Jan. 13, 2010) (defendant "must produce the requested class-wide documents and information relating to its prior express consent defense"; *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *4 (N.D.Ill. June 13, 2011) (compelling answer to interrogatories concerning consent affirmative defense).

**2. Identify each person whose cellular telephone number Allstate or someone else called to promote or advertise Allstate products or services using the same dialer system used to call (630) 779-2696 between October 8, 2015 and present.**

RESPONSE:  Allstate objects to this interrogatory as overbroad and unduly burdensome because the interrogatory is not limited to the allegations, parties, scope, or subject matter at issue in this litigation.  Allstate also objects to this Interrogatory to the extent that it calls for Allstate to respond for third parties.  Subject to and without waiving these objections, Allstate responds that it did not make any telephone calls to (630) 779-2629.  Allstate further responds that it is without knowledge as to the identity of the person or entity that allegedly called (630) 779-2629 at any time during the date range in question or whether a dialing system was used to place the alleged calls.  Allstate has no further information responsive to this interrogatory.

**3. Do you contend that Plaintiff or any person responsive to Interrogatory # 2 signed an agreement containing a clear and conspicuous disclosure informing the person that: (A) by signing the agreement, he or she authorizes Allstate to deliver or cause to be delivered telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) he or she is not required to sign the agreement or agree to enter into such an agreement as a condition of purchasing any property, goods, or services? If so, then please identify each such person, and with respect to each such person, please identify the applicable telephone number, explain with specificity the basis for such contention, and specifically identify all evidence that supports your contention including Bates numbers of all documentary evidence.**

RESPONSE:  Allstate incorporates its responses and objections to Interrogatory No. 2 as if fully stated herein.  Allstate objects to this interrogatory as overbroad and unduly burdensome because the interrogatory is not limited to the allegations, parties, scope, or subject matter at issue in this litigation.  Allstate also objects to this Interrogatory to the extent that it calls for Allstate to respond for third parties. Allstate further objects to this Interrogatory on the grounds that it is compound and vague, including because it incorporates a different Interrogatory, and because the phrase 'Plaintiff or any person responsive to Interrogatory No. 2' is nonsensical.  Allstate interprets that to mean 'any person identified in response to Interrogatory No. 2.'  Subject to and without waiving these objections, Allstate responds that it did not make any telephone calls to (630) 779-2629.  Allstate further responds that it is without knowledge as to the identity of the person or entity that allegedly called (630) 779-2629 at any time during the date range in question or whether a dialing system was used to place the alleged calls.  Allstate has no further information responsive to this interrogatory.

**4.  Identify each person to whose telephone number Allstate or someone else initiated at least two telephone solicitation calls (i.e. calls for the purpose of**

encouraging purchase of Allstate products or services) within any 12-month period between October 8, 2015 and present.

RESPONSE: Allstate objects to this interrogatory as overbroad and unduly burdensome because the interrogatory is not limited to the allegations, parties, scope, or subject matter at issue in this litigation. Allstate also objects to this Interrogatory to the extent that it calls for Allstate to respond for third parties. Subject to and without waiving these objections, Allstate responds that it does not make telephone solicitation calls. Allstate further responds that, to the extent other parties make such calls, Allstate does not track such information.

**5. Do you you contend that Plaintiff or any person responsive to Interrogatory #4 signed a written agreement with Allstate which states that such person agrees to be contacted by Allstate and includes the telephone number to which the calls may be placed? If so, then please identify <u>each</u> such person, and with respect to <u>each</u> such person, please identify the applicable telephone number, explain with specificity the basis for such contention, and specifically identify all evidence that supports your contention including the Bates numbers of all documentary evidence.**

RESPONSE: Allstate incorporates its responses and objections to Interrogatory No. 4 as if fully stated herein. Allstate objects to this interrogatory as overbroad and unduly burdensome because the interrogatory is not limited to the allegations, parties, scope, or subject matter at issue in this litigation. Allstate also objects to this Interrogatory to the extent that it calls for Allstate to respond for third parties. Allstate further objects to this Interrogatory on the grounds that it is compound and vague, including because it incorporates a different Interrogatory, and because the phrase 'Plaintiff or any person responsive to Interrogatory No. #4' is nonsensical. Allstate interprets that to mean 'any person identified in response to Interrogatory No. [4].' Subject to and without waiving these objections, Allstate responds that it did not identify any persons in response to Interrogatory No. 4. Allstate further responds that, because it lacks information responsive to Interrogatory No. 4, it therefore lacks information responsive to this Interrogatory, which incorporates and relies on Interrogatory No. 4.

(Dckt. #49, Ex. 6).

The Court agrees with Gebka that interrogatories Nos. 3 and 5 concern Allstate's affirmative defense of consent. The Court next addresses the parties' dispute as to whether Allstate has made sufficient efforts to obtain responsive information and actually answered all inquiries posed by the interrogatories. Gebka asserts that Allstate's answers are incomplete and that it has failed to fulfill its duty to obtain responsive information that is within the possession

of others who are under Allstate's control. (Dckt. #52 at 7) (citing to *Hanley v. Como Inn, Inc.,* No. 99 C 1486, 2003 WL 1989607, at *4 (N.D.Ill. Apr. 28, 2003)). Allstate asserts that it has sufficiently answered the interrogatories, it need only respond with its *own* corporate knowledge, and that it has no duty "to respond for third parties." The Court agrees with Gebka on both scores.

To begin, the Court finds that Allstate did not answer the part of interrogatory No. 3 that inquires whether Allstate contends that "[p]laintiff . . . signed an agreement containing a clear and conspicuous disclosure informing [him] that: (A) by signing the agreement, he . . . authorizes to deliver or cause to be delivered telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) he . . . is not required to sign the agreement or agree to enter into such an agreement as a condition of purchasing any property, goods, or services?" Allstate similarly failed to answer the part of interrogatory No. 5 that inquires whether Allstate contends that "[p]laintiff . . . signed a written agreement with Allstate which states that [he] agrees to be contacted by Allstate and includes the telephone number to which the calls may be placed?" Allstate has the corporate knowledge to answer whether it makes the above contentions and it must amend interrogatories Nos. 3 and 5 to answer these inquiries.

The Court further finds that Allstate's duty to provide information in its interrogatory answers extends to information in the hands of third parties or sources "under its control." *See, e.g., Gerling Int'l Ins. v. Comm'r,* 839 F.2d 131, 138 (3d Cir. 1988) ("'Rule 33 requires that a corporation furnish such information as is available from the corporation itself *or from sources under its control.*'"), *quoting Brunswick Corp. v. Suzuki Motor Co.,* 96 F.R.D. 684, 686 (E.D.Wis. 1983) (emphasis added); *Hanley,* 2003 WL 1989607, at *4 (same); *Brock,* 1985 WL 2120, at *1 ("If a party is a corporation, information in the hands of an agent and others within

its control must be supplied"); *Bell v. Woodward Governor Co.,* No. 03 C 50190, 2005 WL 289963, at *2 (N.D.Ill. Feb. 7, 2005) (same). Information is under the control of a corporation for discovery purposes if the corporation has the "legal right" to obtain it. *Gerling,* 839 F.2d at 140; *Meridian Labs., Inc. v. OncoGenerix USA, Inc.,* 333 F.R.D. 131, 135 (N.D.Ill. 2019) (same, citing cases).[3] The determination of whether a corporation has control over information involves a fact specific inquiry and the party seeking the information has the burden of establishing the opposing party's control over it. *Meridian,* 333 F.R.D. at 135 (citing cases).

In this case, Gebka asserts that Allstate's Field Sales Leader encouraged and authorized Allstate agencies, including Brian Saving Allstate Agency, to engage third party vendors – such as the Richardson Marketing Group LLC ("RMG") – to make telemarketing calls to generate business "leads" for Allstate. (Dckt. #52 at 4). In February 2019, RMG and Brian Saving executed a "lead provision agreement" which provides that Brian Saving will pay RMG a fee for each "lead" (*i.e.,* "prospective customer") that RMG furnishes to Brian Saving. (Dckt. #49, Ex. 2). Gebka alleges that these "leads" were generated through a process which entailed robocalling a telephone number RMG or another third party obtained from the Internet in an effort to get the person called (*i.e.,* the "lead") to agree to consider purchasing Allstate insurance. (Dckt. #52 at 11). The telemarketing calls would either be live-transferred to Brian Saving without ever ending the call (a "live transfer lead") or the called party's contact information

---

[3] Although the above cases concern the standard for determining whether a corporation controls documents for purposes of Rule 34, the same standard governs under Rule 33 for determining whether a corporation controls information for purposes of answering interrogatories. *See, e.g., Costa v. Kerzner Int'l Resorts, Inc.,* 277 F.R.D. 468, 471 (S.D.Fla. 2011) ("it is well-established that Rules 33 and 34 are 'equally inclusive in their scope' . . . As such the principles governing Defendants' obligation to respond to Plaintiff's interrogatories [are] the same as those governing Defendants' obligation to respond to Plaintiff's document requests") (citation omitted); *Bolton v. Baldwin Cty. Pub. Sch.,* No. CA 13-0548-C, 2014 WL 12824214, at *3 (S.D.Ala. May 28, 2014) (same).

would be sent to Brian Saving for a callback (a "call verified lead"). (*Id.*). Although Allstate denies knowledge of the specifics of how the leads are generated, it does not appear to dispute that the process described above occurs. (Dckt. #56 at 2).

After consideration of the record and authority regarding the scope of a corporation's duty to provide information in response to interrogatories, the Court finds that Allstate has inappropriately limited the information provided in its interrogatory answers based on its objection that it need not "respond for third parties."[4] Although Allstate need not "respond for third parties" as such, it must – as the caselaw cited above holds – include in its answers all information within its control including information in the hands of its agent, Brian Saving. Allstate does not argue that it lacks the ability to obtain documents and information from Brian Saving to answer Gebka's discovery requests. To the contrary, Allstate maintains Allstate.com email accounts for Brian Saving and each of its other agencies and it has collected and produced to Gebka emails from two of Brian Saving's employees during the course of discovery. (Dckt. #54 at Ex. 13 ¶¶8, 9). As explained below, Allstate's answers are deficient because it appears that Brian Saving has information that would enable Allstate to provide more complete responses to inquiries posed by interrogatories Nos. 3 and 5.

In particular, Gebka has attached to his motion examples of the type of e-mails that RMG sends to Brian Saving for the purpose of documenting the name, telephone number, date of contact, and location of each lead it has generated for Brian Saving. (*See* Dckt. #52-1). Thus, Brian Saving knows the contact information for at least some of the persons from February 2019 – the date that RMG and Brian Saving executed their "lead provision agreement" – through the

---

[4] The Court presumes that Allstate would define Brian Saving as a "third party" given that it considers its agencies to be independent agents/contractors. (Dckt. #54 at Ex. 13 ¶8).

present who fit within the categories set forth in interrogatories Nos. 2 and 4. As Gebka asserts (Dckt. #52 at 8), interrogatories Nos. 3 and 5 call upon Allstate to answer the specified consent-related inquiries regarding persons who fit within the categories defined by interrogatories Nos. 2 and 4, respectively. RMG also provided Brian Saving with the names of at least some of the persons whom it "live transferred" on more than one occasion (*see* Dckt. #52-8) and this documentation provides Brian Saving with additional information regarding persons who are within the category defined by interrogatory No. 4.

In addition, the "lead provision agreement" requires Brian Saving to "maintain records of and provide contact information for all individuals who request no further solicitation or contact for purposes of soliciting the products offered, in accordance with all state and federal laws and regulations (the 'Opt Out List')" to RMG. (Dckt. #49, Ex. 2). Brian Saving is further required to "provide RMG with the Opt Out List to ensure RMG knows when individuals identified in the Leads request no further solicitation." (*Id.*). In light of its duty to keep track of individuals who have *not* consented to contact regarding Allstate, it is reasonable to presume that Brian Saving may have knowledge of individuals who *have* consented to be contacted by Allstate by providing the sort of written agreements consenting that are described in interrogatories Nos. 3 and 5. If Brian Saving has such information, Allstate is required to obtain it and incorporate the information into its revised answers.

In sum: Allstate is ordered to amend its answers to interrogatories Nos. 3 and 5 to incorporate and reflect all responsive information it obtains from Brian Saving and all other sources under its control, and to correct its acknowledged typographical errors[5] within 21 days of the entry of this order.

---

[5] Allstate acknowledges that its answers to interrogatories Nos. 2 and 3 contain typographical errors. (*See* Dckt. #56 at 8 n.4).

**B.     Allstate must produce in unredacted form the confirmation e-mails and spreadsheets it previously produced to Gebka**

RMG sends to Brian Saving e-mails with attached spreadsheets which document the name, telephone number, date of contact, and location of each "live transfer" and "call verified" lead that it generated for Brian Saving.  (*See, e.g.,* Dckt. #52-3 (March 1, 2019 e-mail from RMG to Brian Saving concerning "live transfers")).  Allstate obtained these same types of "confirmation" e-mails and spreadsheets from Brian Saving's e-mail account but produced them to Gebka with the redaction of all identifying information regarding the leads with the exception of information concerning Gebka.  (*See* Dckt. #49, Ex. 4 (redacted version of the same March 1, 2019 e-mail from RMG); Dckt. #52-7 at 2, 7 (an Allstate-produced August 13, 2019 e-mail from RMG to Brian Saving concerning "transfers to date . . . Billable list" that lists only Gebka's information but redacts identifying information concerning dozens of other leads)).[6]

Gebka claims that the confirmation e-mails and spreadsheets that RMG sent to Brian Saving "identify class members and directly or indirectly confirm the date of calls to them" and he seeks an order compelling Allstate to produce fully unredacted versions of such documents that it has already produced in discovery.  According to Gebka, the "lead confirmation emails are, collectively, the equivalent of a call log or list of people called" (Dckt. #52 at 14) and, as such, they are relevant to prove the merits of a TCPA claim, to establish the numerosity, commonality, and typicality requirements of Rule 23, and to show that Allstate is vicariously liable for the calls placed on its behalf under agency principles.  (*Id.,* at 13-15).

---

[6] Gebka has knowledge of what Allstate has redacted from the Brian Saving emails Allstate produced to him because he has received unredacted versions of some of these same emails pursuant to a subpoena he issued to RMG.  (*Compare* Dckt. #52-2 *with* Dckt. #52-6).

Allstate – which asserts that it redacted the documents to protect the privacy of the other individuals identified therein – objects to producing the identifying information it redacted from the confirmation e-mails and spreadsheets on the grounds that the information is not relevant.  In particular, Allstate denies that the documents identify potential class members, and it asserts that it did not make the calls reflected in the documents and that Gebka has no evidence as to how the calls were made or who made them.  (Dckt. #56 at 11-14).  Allstate further asserts that the redacted identifying information, if produced at all, should not be produced prior to the determination of whether a class should be certified because plaintiff's counsel will simply use the information to troll for new clients.  (Dckt. #56 at 12).  For the reasons explained below, the Court overrules Allstate's objections.

This Court has broad discretion in deciding the degree to which discovery concerning class certification issues should go forward and such discovery is allowed where "there is a need to determine whether Rule 23 requirements are met."  *Loy] v. Motorola, Inc.,* No. 03-C-50519, 2004 WL 2967069, at *3 (N.D.Ill. Nov. 23, 2004).  In particular, precertification discovery is appropriate concerning Rule 23's threshold requirements of numerosity, common questions/commonality, and adequacy of representation.  *See, e.g., Deslandes v. McDonald's USA, LLC,* No. 1:17-CV-04857, 2019 WL 7480646, at *1 (N.D.Ill. July 17, 2019); *Miner v. Gov't Payment Serv., Inc.,* No. 14-CV-7474, 2017 WL 3909508, at *3 (N.D.Ill. Sept. 5, 2017).  Furthermore, while a plaintiff bears the burden of showing that the desired discovery is likely to produce substantiation of the class allegations, the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification.  *Deslandes,* 2019 WL 7480646, at *1; *Miner,* 2017 WL 3909508, at *4; *Loy,* 2004 WL 2967069, at *3.

Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable. *See, e.g., Medina v. Enhanced Recovery Co., LLC,* No. 15-14342-CIV, 2017 WL 5196093, at *3-4 (S.D.Fla. Nov. 9, 2017); *Mbazomo v. ETourandTravel, Inc.,* No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D.Cal. May 30, 2017); *Doherty v. Comenity Capital Bank & Comenity Bank,* No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D.Cal. May 9, 2017); *Henderson v. United Student Aid Funds, Inc.,* No. 13CV1845-JLS BLM, 2015 WL 4742346, at *7 (S.D.Cal. July 28, 2015) (allowing discovery of the call records of collections vendors who called plaintiff on behalf of defendant);[7] *see also Henderson v. United Student Aid Funds, Inc.,* 918 F.3d 1068, 1070-71 (9th Cir. 2019) (explaining that defendant student loan guarantor/owner hired a loan service company which, in turn, hired collections vendors who called plaintiff); *Webb,* 2014 WL 325132, at *2; *Dziennik v. Sealift, Inc.,* No. 05-cv-4659 (DLI)(MDG), 2006 WL 1455464 at *1 (E.D.N.Y. May 23, 2006) (information concerning class members' names and addresses can be discoverable when it concerns "issues relevant to

---

[7] The Court is unpersuaded by Allstate's citation to *Ossola v. Am. Express Co.,* No. 13 C 4836, 2015 WL 5158712, at *7 (N.D.Ill. Sept. 3, 2015), for the proposition that call data is relevant only in cases where the defendant is the alleged dialer. (Dckt. #56 at 13). In *Ossola,* the class representatives – who were called by one of defendant's third party vendors, and not by defendant itself – sought to represent a class that included individuals directly called by defendant and they sought discovery of defendant's call records to help them find a class representative who was directly called by defendant notwithstanding the fact that plaintiffs had previously asserted (and the court had previously found) that defendant's own call records were "irrelevant" to plaintiffs' claims. *Ossola,* 2015 WL 5158712, at *1, 6-7. It was in this context that the *Ossola* court indicated that call data was relevant only where the defendant is the alleged dialer. *Id.,* at *7. The *Ossola* court did not address the situation where – as in this case and in *Henderson* – a plaintiff seeks to discover the call logs of an entity that plaintiff alleges made (or caused to be made) calls on a defendant's behalf.

class certification such as numerosity") (citing to *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n.13 (1978)).[8]

Allstate asserts that the above caselaw is distinguishable since "RMG's lead e-mails and spreadsheets are *not* the equivalent of call lists, . . . because they do not identify the entity that made the alleged calls" and Gebka "offers no evidentiary support for his characterization of the redacted information as evidence of individuals who were 'robocalled on behalf of Allstate.'" (Dckt. #56 at 12-13) (emphasis in original).  The Court disagrees.  The pertinent question is not the name attached to the documents but rather, whether the documents contain information that "bears relevance to the issues of class certification."  *See Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-CV-0965-GPC-DHB, 2013 WL 3746118, at *4 (S.D.Cal. July 15, 2013) ("Schwan's assertion that class lists are presumptively nondiscoverable confuses the issue; whether or not the list is a 'class list,' it is discoverable if it bears relevance to issues of class certification").  In this instance, Gebka *has* provided information that supports his theory that the documents contain information regarding individuals who were robocalled on behalf of Allstate.

In particular, RMG sent the confirmation e-mails and spreadsheets to Brian Saving to document the leads that RMG was generating so it could be paid a fee for each lead pursuant to the "lead provision agreement."  This provides a basis to infer that each lead was a person who was robocalled on Allstate's behalf by a call center arranged by RMG.  (*See* Dckt. #56-1 at 6 (a June 24, 2020 e-mail from RMG to Gebka's attorney referencing the uploading of call records from call centers 1, 2, and 3 along with files "sent to Center 4 to call")).[9]  Furthermore, one of

---

[8] Allstate's reliance on *Dziennik* (*see* Dckt. #56 at 12), is misplaced.  The *Dziennik* plaintiffs were denied discovery of the class members' information because they sought it to verify defendants' responses to discovery, and not for Rule 23 purposes.  *Dziennik,* 2006 WL 1455464, at *2.

[9] The parties have not yet deposed any witnesses from RMG and the exact nature of the connection between RMG and the call centers is unclear on the record.

14

the redacted RMG documents identifies lists Gebka by name as a "live transfer lead" that RMG provided to Brian Saving and stated other identifying information regarding him (namely, his cell phone number, zip code, state, and date of call). (Dckt. #52-7 at 2, 7). Gebka alleges – without contradiction – that he was robocalled on behalf of Allstate despite the fact that he is on the do-not-call list.[10]  It is reasonable to infer that the dozens of other persons whose information was redacted from this document were likewise robocalled on behalf of Allstate regardless of whether they were on the do-not-call list.  Thus, the confirmation emails and spreadsheets contain identifying information regarding persons who are potential class members.  As such, the documents are relevant in their unredacted form to: (1) the size of the putative class (numerosity); (2) the fact that putative class members experienced common treatment (commonality); and (3) the fact that Gebka's claim is typical of the claims of other putative class members.

Finally, the Court rejects Allstate's assertion that the confirmation e-mails and spreadsheets should not be produced in unredacted form prior to the resolution of plaintiff's motion for class certification.  The redacted information – as discussed above – is relevant to Rule 23 issues and it is needed for the class certification proceedings.  In any event, even if the unredacted information were relevant only to "who *may* be *potential* class members *only if* a class were to be certified" as Allstate asserts (Dckt. #56 at 11), such discovery is not premature because there is no order bifurcating class discovery in this case.  *See, e.g., Whiteamire Clinic,* 2013 WL 5348377, at *3 ("Quill argues that any requests for information beyond that concerning the named plaintiff are premature because they are not necessary for the Court to determine whether a class should be certified.  We disagree.  The district court judge did not bifurcate

---

[10] In its answer, Allstate asserts that it lacks sufficient information to admit or deny Gebka's allegations regarding the robocalls he received.  (Dckt. #20 at 5-6).

merits discovery from discovery related to class certification, and thus discovery is not limited to that which is relevant to a motion for class certification.").

In sum, for the reasons explained above, the Court orders Allstate to produce unredacted versions of the confirmation emails and spreadsheets that it produced from Brian Saving's e-mail accounts pursuant to Gebka's document requests numbers 6, 7, 10, 11, and 13 within 21 days of the entry of this order. Although the Court does not limit the degree to which the documents should be unredacted, the Court will order that the unredacted documents be treated as confidential under the parties' Confidentiality Order (Dckt. #35) to protect the privacy interests of the putative class members. *See Stemple v. QC Holdings, Inc.,* No. 12-CV-1997-CAB WVG, 2013 WL 10870906, at *4 (S.D.Cal. June 17, 2013). The Court further grants Allstate's request to prohibit Gebka and his counsel from: (1) contacting any person appearing in the confirmation e-mails and spreadsheets unless and until a class is certified; (2) contacting putative class members without seeking leave of court in the event a class is certified; and (3) from using the information in the unredacted documents for any purpose in the event that a class is not certified. *See, e.g., Mbazomo,* 2017 WL 2346981, at *6; *Webb,* 2014 WL 325132, at *3.

### C. Allstate need not produce e-mails and attachments that RMG exchanged with any Allstate agency other than Brian Saving

Gebka makes a passing argument in a footnote that Allstate should be required to produce unredacted e-mails between RMG and "any of the eighty-five Allstate agencies that used RMG" to avoid Allstate from being the sole decider "of what constitutes a 'lead confirmation' email." (Dckt. #52 at 14 n.6). He further argues that these additional e-mails between other Allstate agencies and RMG concerning lead issues "are likewise relevant to agency as it shows Allstate's knowledge of the telemarketing campaign." (*Id.* at 16). Allstate objects to this request for a number of reasons including that: (1) the agencies other than Brian Saving are not part of this

litigation and discovery regarding them is neither relevant nor proportional to the needs of the case as required by Rule 26(b)(1); (2) Gebka never asked for this information during discovery and he failed to object to the limiting search parameters that Allstate set; and (3) Gebka violated Local Rule 37.2 by asserting this argument in his motion to compel without first raising this issue during the parties' meet and confer discussion. (Dckt. #56 at 14-15).

The Court denies Gebka's request to compel the production of documents exchanged between RMG and the Allstate agencies based upon his failure to comply with Local Rule 37.2 with respect to this issue. *See e.g., Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *7 (N.D.Ill. Apr. 22, 2020); *Rustom v. Rustom*, No. 17 C 9061, 2018 WL 3105926, at *1 (N.D.Ill. June 25, 2018). The need for the parties to confer regarding this discovery request was especially important given the manner in which the request could potentially cause a significant expansion in the scope of discovery by sweeping in RMG's correspondence with up to 84 other Allstate agencies. As it stands now, Gebka has failed to provide the Court with sufficient information to determine whether such discovery would be appropriate. *See Miner,* 2017 WL 3909508, at *4 (Rule 26(b)(1)'s proportionality standard provides that "pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification").

## CONCLUSION

For the reasons stated above, plaintiff Thomas Gebka's motion to compel (Dckt. #49) is granted in part and denied in part. Defendant The Allstate Corporation is ordered to submit the required updated responses as detailed in this memorandum opinion and order within 21 days (by March 25, 2021) and defense counsel shall certify Allstate's compliance. *See CSMC 2007-C4 Egizii Portfolio LLC v. Springfield Prairie Properties, LLC,* No. 15-3195, 2018 WL 7859720, at

*3 (C.D.Ill. Aug. 31, 2018) (requiring counsel to certify parties' compliance with discovery order); *Learning Resources, Inc. v. Playgo Toys Enterprises Ltd.,* No. 19-CV-00660, 2020 WL 2061536, at *3 (N.D.Ill. Apr. 29, 2020) (same, citing cases).

**Dated: March 4, 2021**

**Jeffrey I. Cummings**
**United States Magistrate Judge**