**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-06662 |
| v. | ) ) | Hon. Sharon J. Coleman |
| ALLSTATE INSURANCE COMPANY, a Delaware limited liability company, | ) ) ) | Mag. Jeffrey I. Cummings |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM**

128542_3

# TABLE OF CONENTS

I.     INTRODUCTION .................................................................................................1

II.    RELEVANT BACKGROUND .............................................................................2

   A.   Plaintiff's allegations. ...................................................................................2

   B.   Procedural History. .......................................................................................3

   C.   Discovery. .....................................................................................................6

   D.   The proposed Settlement ...............................................................................7

      1.   The Settlement Class .............................................................................7

      2.   Monetary relief for Settlement Class Members .....................................8

      3.   Cy pres distributions. ............................................................................8

      4.   Settlement Class release .........................................................................9

      5.   Class Representative Service Award. ...................................................10

      6.   Attorneys' fees and costs. ....................................................................10

      7.   Administration and Notice. ..................................................................11

III.   ARGUMENT .....................................................................................................12

   A.   The settlement approval process. ................................................................12

   B.   The Settlement warrants preliminary approval. ..........................................13

      1.   The Class has been adequately represented. ........................................14

      2.   The Settlement resulted from arm's length negotiations. ....................15

      3.   The proposed Settlement treats Settlement Class Members equitably. ......16

      4.   The relief provided to the Settlement Class is more than adequate ...........17

         a.    The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval. ................................................18

         b.    The proposed method of distribution is effective. ............................20

         c.    The proposed attorney fee award and timing of payment support preliminary approval. .......................................................................21

   C.   The Settlement Class should be certified. ..................................................22

      1.   The Settlement Class is sufficiently numerous. ..................................23

      2.   Plaintiff's claims are typical. ...............................................................23

      3.   Plaintiff and Counsel are adequate. ....................................................24

      4.   Commonality is satisfied. ....................................................................24

i

      5.  Common questions predominate. ...............................................................25

      6.  A class action is the superior means of resolving this dispute. .................26

      7.  The Settlement Class is ascertainable. ....................................................27

  D.  The proposed Notice plan is constitutionally sound........................................28

IV.  CONCLUSION .........................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
 No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011)....................................19

*Amchem Prods. v. Windsor,*
 521 U.S. 591 (1997)......................................................................................................22, 27

*Aranda v. Caribbean Cruise Line, Inc.,*
 No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017)...................................16

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
 616 F.2d 305 (7th Cir. 1980) .................................................................................................12

*Beaton v. SpeedyPC Software,*
 907 F.3d 1018 (7th Cir. 2018) .............................................................................................23

*Birchmeier v. Caribbean Cruise Line, Inc.,*
 896 F.3d 792 (7th Cir. 2018) ..........................................................................................10, 21

*Braver v. Northstar,*
 5:17-cv-00383-F (W.D. Okla. 2020).......................................................................................9

*Connor v. JPMorgan Chase Bank, N.A.,*
 No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015).........................................................17

*Cornejo v. Amcor Rigid Plastics USA, LLC,*
 No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020)......................................................................22

*Facebook, Inc. v. Duguid,*
 141 S.Ct. 1163 (2021) ...........................................................................................................4

*Felzen v. Andreas,*
 134 F.3d 873 (7th Cir. 1998) ...............................................................................................12

*Fournigault v. Independence One Mortgage Corp.,*
 234 F.R.D. 641(N.D. Ill. 2006)...............................................................................................14

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
 No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ...............................25

*General Tel. Co. of Sw. v. Falcon,*
 457 U.S. 147 (1982)..............................................................................................................26

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, (N.D. Ill. Oct. 10, 1995)..........................12, 20

*Golon v. Ohio Savs. Bank*,
  No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999).................................................25

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018) ......................21

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010).............................................................................................17

*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master
  Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)............................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11  (E.D.N.Y. 2019) ..............................................................................................13

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
  728 F.3d 682 (7th Cir. 2013) ....................................................................................................8

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ..................................................................................................12

*Jonsson v. USCB, Inc.*,
  2015 U.S. Dist. LEXIS 69934 (C.D. Cal. 2015)......................................................................9

*Keim v. ADF Midatlantic, LLC*,
  2020 U.S. Dist. LEXIS 49933 (S.D. Fla. 2020).......................................................................9

*Kramer v. Autobytel*,
  No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) .......................17

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
  No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255 (N.D. Ill. Feb. 19, 2014)..............................26

*Langendorf v. Skinnygirl Cocktails, LLC*,
  306 F.R.D. 574 (N.D. Ill. 2014)..............................................................................................24

*Lee v. Global Tel*Link Corp.*,
  2018 U.S. Dist. LEXIS 163410 (S.D. Cal. 2018) .....................................................................9

*Legg v. AEO*,
  14-cv-02440-VEC (S.D. NY 2017) ...........................................................................................9

*Leung v. XPO Logistics, Inc.*,
　326 F.R.D. 185 (N.D. Ill. 2018)..................................................................................9

*Malta v. Fed. Home Loan Mortg. Corp.*,
　No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) ..............................17

*Martinez v. Medicredit, Inc.*,
　2018 U.S. Dist. LEXIS 81818 (E.D. Mo. 2018)........................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　339 U.S. 306 (1950)..................................................................................28

*Mullins v. Direct Digital, LLC*,
　795 F.3d 654 (7th Cir. 2015) ..............................................................23, 27

*Murray v. GMAC Mort. Corp.,*,
　434 F.3d 948 (7th Cir. 2006) ..................................................................26

*Murray v. New Cingular Wireless Servs.*,
　232 F.R.D. 295 (N.D. Ill. 2005)..............................................................27

*Ortiz v. Fibreboard Corp.*,
　527 U.S. 815 (1999)..................................................................................16

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
　231 F.R.D. 280 (N.D. Ill. 2005)..............................................................23

*Parker v. Risk Mgmt. Alternatives, Inc.*,
　206 F.R.D. 211 (N.D. Ill. 2002)........................................................24, 25

*Phillips Randolph Enters., LLC v. Rice Fields*,
　No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007)..................................20

*Phillips v. Waukegan Hous. Auth.*,
　331 F.R.D. 341 (N.D. Ill. 2019)..............................................................23

*Rysewyk v. Sears Holdings Corp.*,
　Civil Action No. 1:15-cv-4519-MSS,
　2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019)....................................13, 14

*Sadowski v. Med1 Online, LLC*,
No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766
(N.D. Ill. May 27, 2008)................................................................................26

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................................20

*Schulte v. Fifth Third Bank*,
No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010).........16

*Smith v. Dearborn County*,
244 F.R.D. 512 (S.D. Ind. 2007)......................................................................23

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019)...............16

*Spano v. The Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ...........................................................................23

*Steinfeld v. Discover Fin. Svcs.*,
12-cv-01118 (N.D. Cal.)...................................................................................17

*Swanson v. American Consumer Industries, Inc.*,
415 F.2d 1326 (7th Cir. 1969) .........................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011). .......................................................................................24

*Willett, et al. v. Redflex Traffic Systems, Inc.*, et al.,
Case No. 13-cv-01241-JCH-RHS, Doc. 269 (D.NM Oct. 24, 2016)......................9

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ...........................................................................14

*Wright v. Nationstar Mortg. LLC*,
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)............................15

**Statutes**

47 C.F.R. § 64.1200(c)(2) ...................................................................................1, 3

47 U.S.C. § 227(b)(3)(B)........................................................................................2

47 U.S.C. § 227(c) ..............................................................................................1, 3

47 U.S.C. § 227(c)(5)..............................................................................................2

47 U.S.C. § 227(c)(5)(B)..........................................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................4

Fed. R. Civ. P. 23 ............................................................................................................passim

**Treatises**

4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ....................................................................20

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002).........................................12, 13

*Manual for Complex Litig.,*
    at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004) .................................13, 28

*Robocalls & Telemarketing*, National Consumer Law Center,
    https://www.nclc.org/issues/robocalls-and-telemarketing.html (last visited Apr. 18, 2022)......9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Thomas Gebka ("Plaintiff") respectfully moves the Court for preliminary approval of the class action settlement ("Settlement") reached between Plaintiff and Defendant Allstate Insurance Company ("Allstate" or "Defendant") (collectively, the "Parties"), which is attached hereto as **Appendix 1**.

Mr. Gebka alleges Allstate violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and the TCPA implementing regulations, 47 C.F.R. § 64.1200(c)(2), by placing telemarketing calls without prior express written invitation or permission to persons whose telephone numbers were registered on the national Do-Not-Call Registry.

After nearly two-and-a-half years of hard-fought litigation, which entailed substantial motion practice, extensive party and non-party discovery, and discovery disputes in this District, the District of Massachusetts, and the Southern District of Ohio to enforce third-party subpoenas, the Parties participated in a day-long mediation overseen by the Honorable Judge Morton Denlow (ret.).

These efforts culminated in a class-wide Settlement which provides outstanding relief for a Settlement Class of approximately 7,451 individuals whose telephone numbers were registered on the national Do Not Call registry and to whom Allstate or anyone allegedly acting on its behalf made at least two telemarketing calls directed by Richardson Marketing Group and related entities.

If approved, Allstate is required to pay $4,500,000.00 into a non-reversionary Settlement Fund from which each Settlement Class Member who files a valid claim will receive a *pro-rata* distribution based on the number of calls to the person. Plaintiff estimates that every class member

1

who files a valid claim will receive $1,000 based on $500 per call.[1]

As demonstrated below, this is an excellent result especially in light of the fact the class' Do Not Call Claim[2] provides for "*up to* $500" in statutory damages per violation, which can be tripled if willfulness is proven. 47 U.S.C. § 227(c)(5)(B) (emphasis added).[3]

This significant relief provided by the Settlement, along with its equitable and effective method of distribution, places it squarely within the range of possible approval, and the proposed Settlement Class easily satisfies Rule 23's requirements for conditional certification. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class, appoint Plaintiff's attorneys as Class Counsel, approve the proposed form and method of Class Notice, and set a Final Approval Hearing.

## II. RELEVANT BACKGROUND

### A. Plaintiff's allegations.

Plaintiff alleges that Allstate solicits potential customers through telemarketing calls advertising and encouraging the purchase of Allstate insurance. *Second Amended Compl.* ¶ 29 (ECF No. 95). Specifically, Allstate authorized its Allstate agencies to solicit new customers through telemarketing calls, and advised and authorized them to engage third-party vendors to

---

[1] The Settlement provides $500 per call and the average number of calls is two. If there is not sufficient funds to pay $500 per call, each class member will receive a *pro-rata* distribution per call after deduction of administration costs, reimbursed expenses, an incentive award, and attorneys' fees. As explained below, Plaintiff will separately file a fee petition and there is no clear sailing agreement for fees or an incentive award.

[2] Plaintiff amended the complaint to add a prerecorded call claim, but based on discovery, that claim will be dismissed without prejudice for the class and is not being released by the class as part of the Settlement.

[3] Other claims under the TCPA mandate $500 per violation, 47 U.S.C. § 227(b)(3)(B), but the DNC claims can provide substantially less since the TCPA provides for "up to $500" per DNC violation, which requires two calls, 47 U.S.C. § 227(c)(5). Thus, it is possible for the Court or jury to find a DNC violation and award a nominal statutory damage.

place the calls. *Id.* ¶¶ 23-24, 86-88, 93-95, 105. The Allstate Agencies contracted with third-party telemarketing vendors who, in turn, directed their call center partners to place the calls. *Id.* ¶¶ 26-28, 98, 109.

One such vendor was Richardson Marketing Group ("RMG"). Allstate endorsed RMG to Allstate agencies and was involved in obtaining special group pricing to incentivize them to use RMG. *Id.* ¶¶ 96-97. Allstate agencies entered into over eighty lead-generation contracts with RMG during the class period. *Id.* ¶ 98. Pursuant to those contracts, RMG directed its call centers to place telemarketing calls to Plaintiff and the other Settlement Class Members. *Id.* ¶ 46. Plaintiff has no prior relationship with Allstate or any Allstate agency, *id.* ¶ 77, and his telephone number has been on the National Do Not Call ("DNC") registry since more than thirty-one days before the calls to his number began, *id* ¶ 33. The same is true of the other Settlement Class Members.

On August 8, 2019, Plaintiff received three telemarketing calls about Allstate insurance quotes, two of which said they were "on behalf of Allstate." *Id.* ¶¶ 34, 36, 37, 39, 42. The second call was transferred to the Brian Saving Allstate agency, which spoke to him about a quote. *Id.* ¶ 40. Later that day, the agency sent Plaintiff a quote for Allstate insurance. *Id.* ¶ 41. On September 18, 2019, Plaintiff received another call promoting Allstate insurance from someone who said he was "calling on behalf of Allstate." *Id.* ¶¶ 43-44. All of these calls were placed by call centers directed by RMG, who was hired by the Brian Saving Allstate agency. *Id.* ¶ 46.

According to Plaintiff, the calls were made without his or the other Settlement Class Members' prior express written invitation or permission and violated the Do Not Call provisions of the TCPA and its implementing regulations, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

**B.      Procedural History.**

On October 8, 2019, Plaintiff filed a Class Action Complaint alleging the calls violated the

TCPA because they used an automatic telephone dialing system ("ATDS"), *see* ECF No. 1 ¶¶ 1-2, 12-13, 15-35, 37, 52-57, and because the telephone numbers called were registered on the National Do-Not-Call registry at the time of the calls, *see id.* ¶¶ 15-25, 28-35, 37, 58-62. On November 26, 2019, Allstate filed its Answer and affirmative defenses to the complaint. ECF No. 20.

On November 11, 2020, Plaintiff sought leave to file an amended complaint adding a claim that a prerecorded call believed to be made on behalf of Allstate that used an artificial and/or prerecorded voice violated the TCPA and implementing regulations. *See* ECF No. 58. Leave to amend was granted, *see* ECF No. 77, and Plaintiff filed an Amended Class Action Complaint adding the claim for the prerecorded calls on March 31, 2021, *see* ECF No. 79.

Meanwhile, on November 19, 2020, Allstate had filed a motion to stay the case pending the United States Supreme Court's decision regarding the TCPA's definition of an ATDS in *Facebook, Inc. v. Duguid*, No. 19-511. *See* ECF No. 64. After the stay motion was fully briefed, *see* ECF Nos. 71-72, *Facebook* was decided on April 1, 2021 and the motion was denied as moot, *see* ECF No. 101.

Allstate then moved to dismiss the amended complaint on April 19, 2021. ECF No. 87. On May 18, 2021, Plaintiff sought leave to file a second amended complaint to, *inter alia*, remove the ATDS claim based on the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), which clarified the definition of ATDS. *See* ECF No. 92.

Leave to amend was granted, *see* ECF No. 94, and Plaintiff filed the currently-operative Second Amended Class Action Complaint on May 20, 2021, *see* ECF No. 95. On June 3, 2021, Allstate moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing it is not vicariously liable for the calls and Plaintiff lacks Article III standing. *See* ECF Nos. 96-97.

Plaintiff also initiated another action in the United States District Court for the District of Massachusetts on June 10, 2021 to enforce his third-party subpoena against Everquote, Inc.

After the Parties fully briefed the motion to dismiss, *see* ECF Nos. 108, 110-111, and Plaintiff subsequently filed a notice of supplemental authority, *see* ECF No. 112, Allstate moved to stay discovery pending the ruling on the motion to dismiss, *see* ECF No. 113. On September 1, 2021, the case was stayed over Plaintiff's objection. *See* ECF No. 114. Plaintiff filed a motion to reconsider the stay. *See* ECF No. 115.

On October 25, 2021, the motion to dismiss the Second Amended Complaint was denied. *See* ECF No. 119. Later the same day, the stay was lifted and the motion to reconsider was denied as moot. *See* ECF No. 120. On November 15, 2021, Allstate filed its Answer and Affirmative Defenses to the Second Amended Complaint. *See* ECF No. 124.

The Parties subsequently agreed to mediate, and the case was again stayed on December 13, 2021. *See* ECF Nos. 125-126.

The mediation occurred on February 10, 2022 before the Honorable Morton Denlow (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). In the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases. *See Declaration of Keith J. Keogh* ¶ 5 ("Keogh Decl."), attached as **Appendix 2**. At the day-long mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class. *Id.* ¶ 6. With the assistance of Judge Denlow, and the day of arm's-length negotiations, the Parties reached an agreement-in-principle on the material terms of a class-wide settlement. *Id.*

Following the mediation, the Parties continued extensive negotiations for more than a month on their remaining points of dispute, *id.* ¶ 6, which culminated in the fully-executed

Agreement for which the Parties now seek preliminary approval.

> ### C. Discovery.

On December 13, 2019, Plaintiff issued third-party subpoenas for documents to Brian Saving and the Brian Saving Allstate Agency.

On December 27, 2019, Plaintiff issued third-party subpoenas for documents to RMG and its CEO, Deryck Richardson. As noted above, Plaintiff was forced to initiate a separate action in the United States District Court for the Southern District of Ohio on January 28, 2020. Plaintiff pursued the matter for the next five months until his motion to compel which had initiated that action was granted on May 22, 2020, and he thereafter finally obtained compliance with the subpoenas including production of crucial call records.

On January 29, 2020, Plaintiff issued his First Set of Interrogatories, Document Requests, and Requests to admit to Allstate, which Allstate timely answered. Allstate served supplemental answers to that discovery on April 10, 2020. On August 21, 2020, Plaintiff filed a motion to compel Allstate to further supplement the interrogatories regarding consent and produce unredacted class data. *See* ECF No. 49. The motion was granted in part and denied in part on March 4, 2021. *See* ECF Nos. 74-75. Allstate timely supplemented those interrogatory answers on March 25, 2021. The Parties conferred about the supplemental answers, resulting in Allstate further supplementing them on April 5, 2021, and following a subsequent conferral about the adequacy of those answers Allstate supplemented them again on April 19, 2021.

On February 27, 2020, Allstate served Plaintiff with interrogatories, document requests, and requests to admit, Plaintiff timely answered. Plaintiff served supplemental answers to various interrogatories on August 10, 2020.

On October 13, 2020, in order to obtain discovery about the prerecorded voice

telemarketing call he received after the lawsuit was filed, Plaintiff issued third-party subpoenas for documents to Everquote, Inc., the lead vendor associated with the call, as well as to Matthew Wigington and The Wigington Agency, which was the Allstate agency believed to be associated with that call and others. After several conferrals, Plaintiff was able to obtain compliance with the Wigington subpoenas.

Plaintiff was forced to initiate a separate action to enforce the subpoena in the United States District Court for the District of Massachusetts, which he did on June 9, 2021.

On August 9, 2021, Plaintiff served Allstate with a Second Set of Interrogatories, Document Requests, and Requests to admit. To that same end, when the stay entered days later was lifted, Plaintiff served Allstate with a Third Set of Interrogatories on November 16, 2021.

Plaintiff retained a database expert to analyze the call records obtained from RMG. The parties subsequently exchanged their experts' results in preparation for the mediation.

### D.    The proposed Settlement.

The Settlement's details are contained in the Agreement signed by the Parties. *See App. 1.* For purposes of preliminary approval, the following summarizes the Agreement's terms:

#### 1.  The Settlement Class.

The Settlement Class is defined as follows:

> [T]he approximately 7,451 individuals to whom: (a) Allstate or anyone allegedly acting on its behalf made at least two telephone calls based on leads provided by, through, and/or directed by Richardson Marketing Group and related entities within a 12-month period (b) promoting Allstate insurance (c) between October 8, 2015 and present (d) where the person's telephone number was registered on a Do Not Call registry for more than 31 days before the first call.

*App. 1* § 2.26.[4]  Based on call records compiled in discovery, the Settlement Class consists of

---

[4] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call), all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section **13.1** of this Agreement, and

128542_3

approximately 7,451 individuals. *See App. 2* ¶ 9 (Keogh Decl.).

## 2. Monetary relief for Settlement Class Members.

The Settlement requires Allstate to create a non-reversionary Settlement Fund of $4,500,000.00, *see App. 1* §§ 2.31, 5.1, 9.1, from which each Settlement Class Member who files a valid claim will receive a *pro rata* portion (based on the number of calls to the person) after payment of attorneys' fees and costs, any incentive award approved by the Court, and the other Settlement Costs incurred, *see App. 1* §§ 2.30, 2.35, 5.2, 11.1, 12.1. No amount of the Settlement Fund will revert to Allstate. *See id.* § 12.2.

Class Counsel, based on their experience in similar TCPA class actions, estimate net awards of $1,000 based on $500 per call. Checks issued to Settlement Class Members shall remain valid for 120 days from the date of issuance. *App. 1* § 12.1.

## 3. *Cy pres* distributions.

If, after the expiration date of the checks distributed, there remains money in the Settlement Fund, all money remaining will be donated to a *cy pres* beneficiary. *App. 1* § 12.1. The class notice will identify this organization.

Subject to Court approval, Plaintiff suggests any such funds be sent to the National Consumer Law Center ("NCLC") and earmarked for working to safeguard the protections of the TCPA, as one would be hard pressed to find another organization more closely aligned with the class's interests than NCLC. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (TCPA class action rejecting Legal Assistance Foundation of Metropolitan Chicago as a *cy pres* recipient because, although court acknowledged it was "a worthy organization," it was

---

individuals whose claims would be or are included in any other settlement. *See App. 1* § 2.26. The Settlement Class does not include any claims for prerecorded calls that were alleged in the Second Amended Complaint, other than the individual claims of Gebka. *Id.*

not closely related to class's interests and "does not directly or indirectly benefit" those interests).[5] Allstate reserves the right to propose an alternative or co-*cy pres* recipient.

### 4. Settlement Class release.

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that arise out of or relate in any way to Allstate or anyone allegedly acting on its behalf making telephone calls based on leads provided by, through, and/or directed by Richardson Marketing Group and related entities where the person's telephone number was registered on a Do Not Call registry for more than 31 days before the first call." *App. 1* § 16.2. Further, the prerecorded call claim will not be released and that claim will be dismissed without prejudice. In addition, and separately, Plaintiff will release any and all individual claims as alleged in the Second Amended Complaint, including the claims for prerecorded calls. *Id.*

---

[5] NCLC has fought to preserve the TCPA's protections for years before Congress, before the Federal Communications Commission ("FCC"), and before the courts as an *amicus curiae*, and is a leading consumer advocacy organization on TCPA matters. Since 2014, it has commented on almost every major proceeding, and many minor proceedings, before the FCC concerning the TCPA. *See Robocalls & Telemarketing*, National Consumer Law Center, https://www.nclc.org/issues/robocalls-and-telemarketing.html (last visited Apr. 18, 2022). NCLC staff meet regularly with staff of the former and current FCC Chairman's office as well as with staff of other Commissioners' office and staff of the Consumer and Governmental Affairs Bureau. *Id.* NCLC staff have also testified before both the House of Representatives and the Senate concerning the TCPA. *Id.* In addition, NCLC has submitted amicus briefs to the Supreme Court and Federal Courts of Appeal in numerous TCPA cases. *Id.* Thus, NCLC's work reasonably approximates the interests pursued by the class. Given NCLC's proven record of TCPA advocacy, numerous courts have approved NCLC as a *cy pres* recipient in TCPA class actions, often over defendant's objection. *See e.g.*, *Braver v. Northstar*, 5:17-cv-00383-F (W.D. Okla. 2020), ECF No. 273; *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205-06 (N.D. Ill. 2018); *Keim v. ADF Midatlantic, LLC*, 2020 U.S. Dist. LEXIS 49933, *11 (S.D. Fla. 2020); *Lee v. Global Tel*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, *23-25 (S.D. Cal. 2018); *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *4-5 (E.D. Mo. 2018); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934, *30 (C.D. Cal. 2015); *Willett, et al. v. Redflex Traffic Systems, Inc.*, et al., Case No. 13-cv-01241-JCH-RHS, Doc. 269 (D.N.M. Oct. 24, 2016); *see also Legg v. AEO*, 14-cv-02440-VEC (S.D.N.Y. 2017) (TCPA) (approving NCLC for TCPA class case); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn. Nov. 10, 2016) (Same).

### 5. Class Representative Service Award.

The Agreement provides that Plaintiff may petition the Court for a Service Award. *App. 1* § 6.2. There is no clear sailing provision as to this request. *See id.* The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval. *Id.* Neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id.* § 6.3. Given Plaintiff's extensive efforts prosecuting this action for the Settlement Class, Plaintiff anticipates requesting a Service Award of $10,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6. Attorneys' fees and costs.

At the same time as notice is sent, Class Counsel will apply to the Court for an award of attorneys' fees and costs. As with the incentive award to the class, the Agreement does not contain a clear sailing agreement as to attorney fees or costs. As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 36% after administration costs are first deducted plus reasonable expenses in common fund class settlements. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel for the work they have performed in procuring a settlement for the Settlement Class and for the work remaining to be performed in documenting the settlement, securing Court approval of it, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *App. 1* § 6.3. Further, the Class Notice will inform the Settlement Class

Members that Class Counsel will seek 36% of the fund net administration costs.

### 7. Administration and Notice.

All costs of notice and claims administration shall be advanced by Allstate, credited against the Settlement Fund. *App. 1* § 9.1(a). The Administrator will be subject to this Court's approval. The Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice; (2) setting up and maintaining the settlement website and toll-free number; and (3) issuing settlement payments. *Id.* §§ 10.1, 10.2, 12.1.

Within twenty-one (21) days of entry of the Preliminary Approval Order, the Administrator will issue the Mail Notice (Exhibit 3 to the Agreement) with the attached claim form via direct mail to all Settlement Class Members. *Id.* §§ 2.18, 2.19, 8.1(D), 10.2(A). First, the Administrator will obtain any missing addresses by performing a reverse look-up using the telephone number. *Id.* § 10.2(A). For Mail Notices returned as undeliverable, the Administrator will perform skip tracing and re-issue the Mail Notice to all Settlement Class Members for whom an alternative address can be found. *Id.*

Thirty days after the first notice, the Administrator will issue a second Mail Notice with the attached claim form to all Settlement Class Members who have not submitted a claim or opted out. *Id.* §§ 2.18, 10.2(A). Two weeks prior to the claim deadline, the Administrator will issue a "reminder" E-Mail Notice (Exhibit 1 to the Agreement) to all Settlement Class Members whose email addresses are known and who have not submitted a claim or opted out. *Id.* §§ 2.12, 10.2(A).

Claims can be submitted online, via the mail or even via telephone using the claim identification number on the class members' notice.

Further, the Administrator will establish and maintain a Settlement Website. *Id.* § 10.2(B). The Settlement Website will include general information such as the Agreement, Website Notice

(Exhibit 5 to the Agreement), the Preliminary Approval Order, the operative Complaint, the attorney fee motion and any other materials the Parties agree to include. *Id.*

## III.    ARGUMENT

### A.    The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion" There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. H. Newberg, A. Conte, Newberg on Class Actions § 11.25. This Motion requests that the Court take the first step by granting preliminary approval.

Under Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (emphasis in original) (citing Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)). Both requirements are satisfied here.

**B.** **The Settlement warrants preliminary approval.**

When deciding whether to grant preliminary approval, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equitably; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *accord Rysewyk v. Sears Holdings Corp.*, No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at *11-

13

12 (N.D. Ill. Jan. 29, 2019).[6]  Each of these factors support preliminary approval.

## 1. The Class has been adequately represented.

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied if the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first two prongs are satisfied here. To begin, Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class she seeks to represent. Plaintiff and the other Settlement Class Members all share identical claims arising from a common course of conduct: Allstate or someone allegedly acting on its behalf making telemarketing calls to the class based on leads provided by, through, and/or directed by Richardson Marketing Group where their telephone numbers were registered on the Do Not Call registry for more than 31 days before the first call. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, assisting his attorneys in investigating the Settlement Class's TCPA claims, reviewing and approving each of the three class action complaints prior to filing, answering written discovery, regularly conferring with his attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See App. 2 ¶ 14.*

---

[6] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

The third prong of the adequacy analysis is also satisfied because Class Counsel have extensive experience in complex litigation and consumer class actions involving TCPA claims, and have been found adequate and appointed class counsel in scores of cases arising under the TCPA and various other consumer protection statutes. *See App. 2* ¶¶ 3, 15-55. Drawing on this experience, proposed Class Counsel were able to extensively evaluate the merits of this case, Allstate's defenses, the benefits of the proposed Settlement, and the attendant risks of further litigation. *Id.* ¶¶ 10, 12-13.

Class Counsel have vigorously pursued the class claims from the outset by investigating Plaintiff's claims, drafting and filing several well-pleaded complaints, briefing and defeating a motion to dismiss, taking party and non-party discovery into merits and class issues, litigating a number of discovery disputes (including initiating two separate cases in other districts to enforce subpoenas), and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *Id.* ¶¶ 4-5. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members who submit valid claims with significant cash relief. As such, the Court should find the adequacy of representation prong met.

## 2. The Settlement resulted from arm's length negotiations.

The Settlement is the product of an "arm's length transaction such Rule 23(e)(2) is satisfied. It was only after actively litigating this matter for nearly two-and-a-half years and conducting extensive party and non-party written discovery that the Parties were prepared to discuss settlement. *See Wright v. Nationstar Mortg.* LLC, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation . . . and engaged in discovery" prior to reaching settlement). Those discussions entailed a day-long mediation assisted by an

experienced mediator before the Parties agreed on the principle terms of the Settlement. *See App. 2* ¶¶ 5-6. Once those terms were in place, another month negotiating the finer details of the Agreement before executing it on April 9, 2022. *Id.* ¶ 6.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The Settlement is non-reversionary, provides significant cash payments to all members of the Settlement Class who submit valid claims, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5 (N.D. Ill. Sept. 10, 2010) (noting courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3. The proposed Settlement treats Settlement Class Members equitably.

The next Rule 23(e)(2) consideration supports approval where the proposed settlement treats all class members equitably. Here, each Settlement Class Member has identical TCPA claims against Allstate, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member who submits a valid claim is entitled to an equal amount per call. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members

are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). No Settlement Class Member is treated differently, and each can object or opt out in the same fashion. Because there is no disparate treatment between members, the Settlement merits approval.

### 4. The relief provided to the Settlement Class is more than adequate.

The most critical Rule 23(e)(2) factor analyzes whether the relief provided for the class is adequate. "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (cleaned up).

Here, Allstate has agreed to create a $4,500,000.00 non-reversionary Settlement Fund for a class of approximately 7,451 individuals, all of whom who submit valid claims are expected to receive $1,000 based on $500 per call.

This Settlement exceeds most other TCPA class actions settlements. Indeed, courts have granted preliminary and final approval of TCPA class action settlements that achieved much smaller recoveries. *See, e.g.*, *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015), ECF No. 160 (Final Judgment and Order of Dismissal entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member would be awarded $39.66) (Holderman, J.); *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval

granted at ECF No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012), ECF Nos. 116 and 137 (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011), ECF Nos. 84 and 91 (approving $5.5 million settlement to benefit 18.1 million class members).

In sum, the relief provided by the proposed Settlement is more than adequate and exceeds the recoveries provided by other TCPA class settlements found to be fair, adequate and reasonable, making the Settlement here a great result for the Class. And, as shown below, the sub-factors set forth in Rule 23(e)(2) further confirm the adequacy of the class relief.

### a. The risks of continued litigation weigh, when viewed against the relief provided, weigh in favor of approval.

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation, and appeals and the associated risk.

While Plaintiff remains confident in the strength of his claims, Allstate denied all of the material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Settlement Class. Allstate's primary defense is that it is not vicariously liable for the calls because it has no agency relationship with RMG or the vendors who placed the calls. *See* ECF No. 124 at 44 (¶¶ 5-6). While Plaintiff is confident he would prevail on this issue, it's a highly-fact-intensive issue with no guarantee of success at trial.

In addition, Allstate intended to avoid liability by proving, among other things, that: (1) Plaintiff consented to the calls by actively participating and providing personal information during

18

128542_3

them, thereby encouraging the calls to continue, *see* ECF No. 124 at 44 (¶¶ 4, 10); (2) the claims are barred by the TCPA's regulatory DNC "safe harbor" because Allstate's do-not-call compliance procedures satisfy 47 C.F.R. § 64.1200(c)(2)(i) and the calls were made in error, *see id.* at 45 (¶ 13). *See also id.* at 44-45 (¶¶ 3, 7, 8, 11-12, 14, 16) (asserting additional defenses).

A victory on any of those defenses could doom the case in its entirety or, at the very least, greatly reduce the size of the proposed class and preclude any recovery for scores of class members who stand to benefit from the Settlement.

And, before resolving Allstate's substantive defenses, Plaintiff would first need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is ideal for class certification, success is certainly not guaranteed and Allstate intends to vigorously oppose. *See* ECF No. 124 at 44 (¶ 2, asserting as a defense that class cannot be certified).

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Allstate intended to seek reduction of damages based on the argument an award of up to $500 per call would violate its right to substantive and procedural due process and is barred by the Fifth, Eight, and Fourteenth Amendments to the United States Constitution. *See* ECF No. 124 at 45 (¶ 9). This, too, presents a significant risk to the Settlement Class, as some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in

this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents a truly excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g.*, *Goldsmith*, 1995 U.S. Dist. LEXIS 15093 at *14-15 ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this sub-factor weighs in favor of preliminary approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes the whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring "only legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.).

Here, class members need only complete a short claim form requiring only basic information like name and address, which can be submitted via online, mail or phone by providing their unique Claim ID found on each Mail Notice that is sent. *See App. 1* §§ 10.2(C); *id.* at Ex. 3.

Notice includes two rounds of mailed notice and a third reminder notice via email to the extent they have not already submitted a claim or opted out. In addition, each class member will be able to choose whether to receive payment via check or electronically. *See id.* §§ 2.12, 2.18, 10.2(A), 10.2(C); *id.* at Ex. 1 (last page of E-Mail Notice containing claim form); *id.* at Ex. 3 (last page of Mail Notice containing claim form). The checks will be mailed and the electronic deposits will be made no later than forty-five (45) days after final approval is granted absent any appeals. *Id.* §§ 2.10, 12.1.

This proposed method of distribution is about as simple and expeditious as a claims-made settlement can get while also ensuring only legitimate claims are paid. The process set forth in the Agreement here is clearly effective and weighs in favor of preliminary approval.

### c. The proposed attorney fee award and timing of payment support preliminary approval.

The final relevant sub-factor[7] analyzes the adequacy of the class relief in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee, nor does it provide that Allstate has agreed to any set fee amount. Instead, Class Counsel anticipates asking the Court to approve a fee award of 36% of the Settlement Fund (excluding administration and other Settlement Costs incurred)—an amount courts within the Seventh Circuit routinely award in TCPA and other class actions. *See, e.g., Birchmeier*, 896 F.3d at 796-97 (affirming attorney fees in TCPA class action of

---

[7] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Because the Parties have reached no such agreement, *see* App. 2¶ 11, this sub-factor does not factor into the analysis, *see, e.g., Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement— other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

36% of first $10 million); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (Kennelly, J.) (36% of fund net admin costs in TCPA class action); *In re Capital One*, 80 F. Supp. 3d 781, 807 (N.D. Ill. 2015) (Holderman, J.) (36% of first $10 million of TCPA class settlement); *see also Martin v. Jth Tax*, No. 1:13-cv-6923, 2015 U.S. Dist. LEXIS 199180, at *8-9 (N.D. Ill. Sep. 23, 2015) (Shah, J.) (34% of total TCPA fund); *Lopez-McNear v. Superior Health Linens, LLC*, No.19-cv-2390 (N.D. Ill. Apr. 27, 2021), ECF No. 69 (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, ECF No. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund).

Class Counsel will file their application on the date of the Notice Deadline, which will then be posted on the Settlement Website allowing Class Members to review or object. The Court will rule on the application and actual funding will occur only after Final Approval. *See App. 1*§§ 2.16, 6.1, 9.1(b). Thus, the provisions regarding fees are fair, reasonable and support approval.

Considering all these factors, the relief provided to the class is more than adequate. For the foregoing reasons, the Parties' Agreement is fair, reasonable, and adequate, and merits approval.

### C.    The Settlement Class should be certified.

In order to certify a settlement class at the preliminary approval stage, the Court must also determine whether the requirements of Rule 23 are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To that end, Plaintiff must demonstrate the Settlement Class satisfies the criteria imposed by Rule 23(a), which requires that: (i) the proposed class be so numerous that joinder of individual class members is impracticable; (ii) there be questions of law and fact common to the class; (iii) the proposed class representative's claims be typical of the class claims; and (iv) the named class representative and counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a); *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

And, because the Settlement provides for monetary relief, the Settlement Class must also satisfy Rule 23(b)(3)'s requirements that: (i) common questions of law or fact predominate over individual issues; and (ii) the class action device is superior to other means of resolving the claims. Fed. R. Civ. P. 23(b)(2). Finally, a Rule 23(b)(3) class must also be "ascertainable"—*i.e.* defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

As explained below, the Settlement Class satisfies all of these prerequisites and should therefore be certified for settlement purposes.

### 1. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires a class be so numerous that joinder of all members is impracticable. A class of as few as 40 is sufficient. *Smith v. Dearborn County*, 244 F.R.D. 512, 517 (S.D. Ind. 2007) (citing *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, fn.9 (7th Cir. 1969)). Here, the Settlement Class consists of approximately 7,451 members, which easily satisfies numerosity.

### 2. Plaintiff's claims are typical.

A putative class representative also must demonstrate that his claims are typical of the claims of the class she seeks to represent. Fed. R. Civ. P. 23(a)(3). A claim is typical if it "arise[es] from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018); *accord Phillips v. Waukegan Hous. Auth.,* 331 F.R.D. 341, 352 (N.D. Ill. 2019). This ensures there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete

coextensivity nor even substantial identity of claims").

Here, there is no daylight between Plaintiff's claims and those of the Settlement Class. Instead, those claims are identical and all flow directly from Allstate or someone allegedly acting on its behalf making telemarketing calls to telephone numbers on the national Do Not Call registry based on leads provided by, through, and/or directed by Richardson Marketing Group and related entities. Thus, Plaintiff's TCPA claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002). Consequently, Plaintiff is typical of the Settlement Class.

### 3. Plaintiff and Counsel are adequate.

Adequacy means Plaintiff and his counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As demonstrated above, both Plaintiff and proposed Class Counsel fully satisfy this requirement. *See supra* § III.B.1.

### 4. Commonality is satisfied.

Commonality requires that "there are questions of law or fact common to the class" and that "the class members have suffered the same injury." Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The class claims must "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. A single common question is sufficient to satisfy Rule 23(a)(2). *Langendorf v. Skinnygirl Cocktails, LLC,* 306 F.R.D. 574, 589 (N.D. Ill. 2014) (collecting cases).

Here, commonality is satisfied because there are many questions of law and fact that center around the calls in question and Allstate's liability, are common to all of the Settlement Class

24

Members' claims, and can be resolved in "single stroke." *See, e.g.*, *Parker*, 206 F.R.D. at 213 ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages.").

### 5. Common questions predominate.

Rule 23(b)(3) requires that "the questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815. Put another way, the critical issue is whether "there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis" since such "proof obviates the need to examine each class member's individual position." *Golon v. Ohio Sav. Bank*, No. 98 C 7430, 1999 U.S. Dist. LEXIS 16452, at *13 (N.D. Ill. Oct. 14, 1999).

That is the case here because Plaintiff's and the other Settlement Class Members' claims hinge on the following common questions, among others, which can be resolved through class-wide evidence: (1) whether the calls constitute telephone solicitations; (2) whether there was consent for the calls; (3) whether the calls violated the TCPA; and (4) whether Allstate is vicariously liable for the calls.

As such, the TCPA violations at issue can, for provisional certification purposes, be

25

determined on a class-wide basis in a single adjudication without consideration of any individualized issues. Predominance is therefore satisfied. *See, e.g.*, *Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated . . . and whether Defendant's actions . . . violated the TCPA" predominated, and that the issue of consent might be resolved through common proof such as "the source of the numbers"); *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255, at *33 (N.D. Ill. Feb. 19, 2014) ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied.").

### 6. A class action is the superior means of resolving this dispute.

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule provides four criteria that govern superiority analysis, all of which weigh in favor of certification. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *accord Sadowski*, 2008 U.S. Dist. LEXIS 41766, at *14 ("In consumer actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'") (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill.

2005)).

Here, the alternative to class resolution is over 7,000 individual lawsuits for recoveries up to $500 without providing attorneys' fees since the TCPA is not fee shifting. As each case would require resolution of identical factual and legal issues, the efficiencies achieved by class-wide resolution are obvious. And there are no manageability issues here because the claims are being certified for purposes of settlement. *See, e.g.*, *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### 7. The Settlement Class is ascertainable.

Finally, the Settlement Class is ascertainable. Although not an element of Rule 23, the ascertainability requirement imposes a modest bar. It simply requires the class to be defined using "objective" criteria. *Mullins*, 795 F.3d at 672.

Here, the Settlement Class definition is based entirely on objective components: (1) at least two telephone calls within a 12-month period based on leads provided by, through, and/or directed by RMG and related entities; (2) promoting Allstate insurance; (3) during a specific date range; (4) to a telephone number that was registered on the national Do Not Call registry more than 31 days before the first call. Further, Settlement Class Members are not only ascertainable, but can be readily identified from call records compiled in the litigation. Accordingly, the ascertainability requirement is satisfied. *Mullins*, 795 F.3d at 672.

As demonstrated above, the Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3) as well as the Seventh Circuit's ascertainability standard. Therefore, the Court should certify the proposed Settlement Class.

### D.     The proposed Notice plan is constitutionally sound.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed forms of Notice, attached as Exhibits 1 and 3 to the Agreement are more than adequate. The Notice Plan provides that direct, individual notice ("Mail Notice") will be mailed by the Administrator to each Settlement Class Member at the address in the class list, or to the address the Administrator obtains via reverse look-up for numbers where the class lists contains no address, within twenty-one (21) days of the entry of Preliminary Approval Order. *App. 1* §§ 2.18, 2.19, 8.1(D), 10.2(A). For Mail Notices returned as undeliverable, the Administrator will perform skip tracing and re-issue the Mail Notice to all Settlement Class Members for whom an alternative address can be found. *Id.* § 10.2(A). Thirty days later, a second Mail Notice will be mailed to all Settlement Class Members who have not submitted a claim or opted out. *Id.* §§ 2.18, 10.2(A).  And two weeks after that, a "reminder" E-Mail Notice will be sent to those people who still have not submitted a claim or opted out. *Id.* §§ 2.12, 10.2(A).

The Mail Notice and E-Mail Notice provide information about the claims at issue, the cash benefits provided by the Settlement, the process for distributing those cash benefits the proposed attorney fee and incentive awards, and the procedure for excluding oneself or objecting. *See App. 1* at Ex. 1 and Ex. 3. Settlement Class Members will have 60 days from the date the Mail Notice

is issued to exclude themselves from the Settlement. *See App. 1*§§ 8.1(D), 8.1(F), 13.1. The Mail Notice shall also direct recipients to (and the E-Mail Notice will have an active hyperlink to) the Settlement Website, which will provide Settlement Class Members with 24-hour access to additional information about the case, including important court documents and a detailed "long form" Website Notice. *Id.* §§ 10.2(A), 10.2(B); *id.* at Ex. 5 (Website Notice).

Accordingly, the proposed Notice Plan passes muster and should be approved.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: **(1)** conditionally certify the Settlement Class and appoint Plaintiff as class representative; **(2)** appoint his attorneys, Keogh Law, Ltd., as Class Counsel; **(3)** preliminarily approve this Agreement and the Settlement reflected herein as fair, adequate and reasonable to the Settlement Class; **(4)** approve the form of Class Notice and find that the notice program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Rule 23; **(5)** direct that Notice be provided to the Settlement Class pursuant to the terms of the Agreement within twenty-one (21) days following entry of the Preliminary Approval Order (the "Notice Deadline"); **(6)** establish a procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Class; **(7)** set a deadline sixty (60) days after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself, or seek to intervene (the "Opt-Out and Objection Deadline"); **(8)** pending determination of whether the Settlement should be finally approved, bar and enjoin all persons in the Settlement Class, individually, and on a representative basis or other capacity, from commencing or prosecuting against any of the Released Parties in any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of

29

the Released Claims unless they timely opt-out; **(9)** pending final determination of whether the Settlement should be approved, stay all proceedings except those related to effectuating the Settlement; and **(10)** schedule a hearing no earlier than sixty (60) days after the Opt-Out and Objection Deadline to consider final approval of the Settlement. Class Counsel proposes the following schedule as set forth in the draft Preliminary Approval Order attached to the Agreement as Exhibit 4 and separately attached hereto as **Appendix 3**:

| | |
|---|---|
| **_____, 2022** [45 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| **_____, 2022** [Notice Deadline] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Award |
| **_____, 2022** [60 days after the Notice Deadline] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| **_____, 2022** [60 days after the Notice Deadline] | Deadline for Class Members to Submit a Claim Form (Claim Period) |
| **_____, 2022** [30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following: (1) List of persons who made timely and proper requests for exclusion (under seal); (2) Proof of Class Notice; and (3) Motion and memorandum in support of final approval, including responses to any objections. |
| **_____, 2022 at ____ _.m.** [No earlier than 149 days from the entry of this Order] | Final Approval Hearing |

Dated: April 18, 2022

Respectfully Submitted,

THOMAS GEBKA, individually and on behalf of all others similarly situated, Plaintiffs

By: /s/ Theodore H. Kuyper

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com

***Attorneys for Plaintiff and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that, on April 18, 2022, I caused a copy of the foregoing **Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Supporting Memorandum** to be served upon all counsel of record via electronic filing using the CM/ECF system.

         /s/ Theodore H. Kuyper

128542_3