**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-06662 |
| v. | ) ) | Hon. Sharon J. Coleman |
| ALLSTATE INSURANCE COMPANY, a Delaware limited liability company, | ) ) ) | Mag. Jeffrey I. Cummings |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES, COSTS, AND INCENTIVE AWARD**

129319

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

On April 25, 2022, this Court preliminarily approved the class action settlement between Plaintiff Thomas Gebka ("Plaintiff" or "Gebka") and Defendant Allstate Insurance Company ("Allstate" or "Defendant"). This Settlement creates a $4,500,000 non-reversionary, common fund ("Settlement Fund") to compensate 7,451 individuals for Allstate's alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c). If finally approved, all Settlement Class Members who file valid claims will receive a *pro-rata* distribution estimated to be at least $1,000 based on $500 per call, even after deductions for administration costs, reimbursed expenses, an incentive award, and attorneys' fees.[1]

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $1,602,000, which represents 36% of the Settlement Fund net administration costs,[2] plus $40,150.43 for Class Counsel's out-of-pocket costs.[3] *See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million).

This request should be approved because (1) it represents the market rate for this type of settlement and (2) represents a reasonable and appropriate amount in light of the substantial risks of prosecuting this action as well as the quality and extent of work Class Counsel performed. Class

---

[1] Most Settlement Class Members received at least two calls. If there are not sufficient funds to pay $500 per call, each class member will receive a *pro-rata* distribution after deduction of administration costs, reimbursed expenses, an incentive award, and attorneys' fees.

[2] $4,500,000 Settlement Fund minus $50,000 administration costs equals $4,450,000, 36% of which equals $1,602,000.

[3] These costs do not include any internal expenses such as copying, legal research or telephone costs. *See Declaration of Keith J. Keogh* ("Keogh Decl.") ¶ 17, attached hereto as **Exhibit 1**.

1

Counsel also respectfully move the Court for an incentive award of $10,000 to Plaintiff Gebka for his work on behalf of the Settlement Class. Such an award is routine and proper.[4]

## II. RELEVANT BACKGROUND

### A. Procedural History.

On October 8, 2019, Plaintiff filed this class action stemming from telemarketing calls made on behalf of Allstate without prior express written consent, invitation or permission. In particular, the Class Action Complaint alleged the calls violated the TCPA because they used an automatic telephone dialing system ("ATDS"), *see* ECF No. 1 ¶¶ 1-2, 12-13, 15-35, 37, 52-57, and because the telephone numbers called were registered on the National Do-Not-Call registry at the time of the calls, *see id.* ¶¶ 15-25, 28-35, 37, 58-62. On November 26, 2019, Allstate filed its Answer and affirmative defenses to the complaint. ECF No. 20.

On November 11, 2020, Plaintiff sought leave to file an amended complaint adding a claim that a prerecorded call believed to be made on behalf of Allstate used an artificial and/or prerecorded voice, and thus violated the TCPA. *See* ECF No. 58. Leave to amend was granted, *see* ECF No. 77, and Plaintiff filed an Amended Class Action Complaint adding the claim for the prerecorded calls on March 31, 2021, *see* ECF No. 79.

Meanwhile, on November 19, 2020, Allstate had filed a motion to stay the case pending the United States Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511, regarding the TCPA's definition of an ATDS. *See* ECF No. 64. After the motion to stay was fully briefed, *see* ECF Nos. 71-72, *Facebook* was decided on April 1, 2021 and the motion to stay was denied as moot, *see* ECF No. 101.

Allstate then moved to dismiss the amended complaint on April 19, 2021. ECF No. 87.

---
[4] The Class Notice sets Plaintiff's request and the dollar amount and percentage sought for fees.

On May 18, 2021, Plaintiff sought leave to file a second amended complaint to, *inter alia*, remove the ATDS claim based on the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021). *See* ECF No. 92.

Leave to amend was granted, *see* ECF No. 94, and Plaintiff filed the currently-operative Second Amended Class Action Complaint on May 20, 2021, *see* ECF No. 95. On June 3, 2021, Allstate moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing it is not vicariously liable for the calls and Plaintiff lacks Article III standing. *See* ECF Nos. 96-97.

After the Parties fully briefed Allstate's motion to dismiss, *see* ECF Nos. 108, 110-111, and Plaintiff subsequently filed a notice of supplemental authority, *see* ECF No. 112, Allstate moved to stay discovery pending the ruling on the motion to dismiss, *see* ECF No. 113. On September 1, 2021, discovery was stayed over Plaintiff's objection. *See* ECF No. 114. Plaintiff filed a motion to reconsider the stay. *See* ECF No. 115.

On October 25, 2021, Allstate's motion to dismiss the Second Amended Complaint was denied. *See* ECF No. 119. Later the same day, the discovery stay was lifted and Plaintiff's motion to reconsider the stay was denied as moot. *See* ECF No. 120. On November 15, 2021, Allstate filed its Answer and Affirmative Defenses to the Second Amended Complaint. *See* ECF No. 124.

The Parties subsequently agreed to mediate. *See* ECF Nos. 125-126. The mediation occurred on February 10, 2022 before the Honorable Morton Denlow (ret.) of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). In the weeks leading up to the mediation, the Parties submitted detailed briefs setting forth their respective views on the strengths of their cases. *See Declaration of Keith J. Keogh* ¶ 5 ("Keogh Decl."), attached as **Exhibit 1**. At the day-long mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class. *Id.* ¶ 6. With the assistance of Judge Denlow, and the day of arm's-length

3

negotiations, the Parties reached an agreement-in-principle on the material terms of a class-wide settlement. *Id.* Following the mediation, the Parties continued extensive negotiations for more than a month on their remaining points of dispute, *id.* ¶ 6, which culminated in the fully-executed Agreement that this Court preliminary approved.

**B.     Discovery.**

This case involved substantial third-party discovery in order to obtain the call records at issue as well as to prove Allstate was vicariously liable for the calls. On December 13, 2019, Plaintiff issued third-party subpoenas for documents to Brian Saving and the Brian Saving Allstate Agency, which is the Allstate agency associated with several calls that are at issue in this case.

On December 27, 2019, Plaintiff issued third-party subpoenas for documents to Richardson Marketing Group ("RMG") and its CEO, Deryck Richardson, the lead vendor associated with several of the calls to Plaintiff. On January 28, 2020, Plaintiff was forced to initiate a separate action in the United States District Court for the Southern District of Ohio to enforce those subpoenas. This action was *Gebka v. Richardson Mktg. Grp., LLC*, No. 2:20-mc-00006 (S.D. Ohio), and it was pursued for the next five months until Plaintiff's motion to compel which had initiated the action was granted on May 22, 2020, and he thereafter finally obtained compliance with the subpoenas including production of crucial call records.

On January 29, 2020, Plaintiff issued his First Set of Interrogatories, Document Requests, and Requests to admit to Allstate, which Allstate timely answered. Allstate served supplemental answers to that discovery on April 10, 2020. On August 21, 2020, Plaintiff filed a motion to compel Allstate to further supplement the interrogatories regarding consent and produce unredacted class data. *See* ECF No. 49. The motion was granted in part and denied in part on March 4, 2021. *See* ECF Nos. 74-75. Allstate timely supplemented those interrogatory answers

4

on March 25, 2021. The Parties conferred about the supplemental answers, resulting in Allstate further supplementing them on April 5, 2021, and following a subsequent conferral about the adequacy of those answers Allstate supplemented them again on April 19, 2021.

On February 27, 2020, Allstate served Plaintiff with interrogatories, document requests, and requests to admit, which Plaintiff timely answered. Plaintiff served supplemental answers to various interrogatories on August 10, 2020.

On October 13, 2020, in order to obtain discovery about the prerecorded voice telemarketing call he received after the lawsuit was filed, Plaintiff issued third-party subpoenas for documents to Everquote, Inc., the lead vendor associated with the call, as well as to Matthew Wigington and The Wigington Agency, which was the Allstate agency believed to be associated with that call and others. Plaintiff obtained compliance with the Wigington subpoenas, but was forced to initiate a separate action to enforce the Everquote subpoena, which he did in the United States District Court for the District of Massachusetts on June 9, 2021. This action was titled *Gebka v. Everquote, Inc.*, No. 1:21-mc-91391 (D. Mass).

On August 9, 2021, Plaintiff served a Second Set of Interrogatories, Document Requests, and Requests to admit, and a Third Set of Interrogatories on November 16, 2021 to Allstate.

In addition, Plaintiff retained a database expert to analyze the call records obtained from RMG. The parties subsequently exchanged their experts' results in preparation for the mediation.

**C. Class Counsel negotiated an extremely favorable Settlement.**

As noted above, Allstate agreed to create a $4,500,000 common fund for a Settlement Class of approximately 7,451 individuals defined as:

> [T]he approximately 7,451 individuals to whom: (a) Allstate or anyone allegedly acting on its behalf made at least two telephone calls based on leads provided by, through, and/or directed by Richardson Marketing Group and related entities within a 12-month period (b) promoting Allstate insurance (c) between October 8, 2015

5

129319

and present (d) where the person's telephone number was registered on a Do Not Call registry for more than 31 days before the first call.

*Settlement Agreement* § 2.26, attached as **Exhibit 2**.[5]

Each Settlement Class Member who files a valid claim will receive a *pro rata* portion of the Settlement Fund based on the number of calls to the person, after payment of attorneys' fees and costs, any incentive award approved by the Court, and the other Settlement Costs incurred. *See Ex. 2* §§ 2.30, 2.35, 5.2, 11.1, 12.1. No amount of the Settlement Fund will revert to Allstate. *See id.* § 12.2. Instead, if money remains in the Settlement Fund after the expiration date of the checks distributed, all remaining money will be donated to a *cy pres* beneficiary. *Id.* § 12.1.

Class Counsel, based on their experience in similar TCPA class actions, estimate net awards of $1,000 based on the average of two calls. This is an outstanding result given the fact that the maximum per-call recovery for do-not-call claims is *up to* $500 absent enhanced damages for a willful or knowing violation. Unlike other TCPA claims, the amount of up to $500 per call is discretionary meaning each Settlement Class Member could have received substantially less absent the Settlement. *See* 47 U.S.C. § 227(c)(5) (providing for "up to $500" per do-not-call violation).

As such, Plaintiff respectfully requests that the Court approve attorneys' fees of $1,602,000, which represents 36% of the net Settlement Fund,[6] plus $40,150.43 for Class Counsel's out-of-pocket costs, and a $10,000 incentive award for Plaintiff Gebka.

---

[5] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call), all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of the Agreement, and individuals whose claims would be or are included in any other settlement. *See Ex. 2* § 2.26. The Settlement Class does not include any claims for prerecorded calls that were alleged in the Second Amended Complaint, other than the individual claims of Mr. Gebka. *Id.*

[6] Once again, the net Settlement Fund is $4,450,000 after deducting the $50,000 in notice and administration costs from the total Settlement Fund of $4,500,000.

### III. ARGUMENT

**A. The Court should award attorney fees based on a percentage of the fund.**

The Seventh Circuit has followed the Supreme Court in recognizing when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a reasonable attorneys' fee from the fund as a whole"); *Birchmeier*, 896 F.3d at 796-97 (affirming attorney fees in TCPA class action of 36% of the first $10 million); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"); *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of a common fund "entitles [counsel] to a share of that benefit as a fee").

The Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to ex ante." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthroid Mktg. Litig.* (*Synthroid II*), 325 F.3d 974, 979-80 (7th Cir. 2003)); s*ee also In re Capital One Tel. Consumer Prot. Act Litig.* (*In re Capital One*), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (Holderman, J.) (holding in a TCPA class action that the percentage of the fund method is "more likely to yield an accurate approximation of the market rate" and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions"); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379

7

129319

(N.D. Ill. 2011) ("the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class"); *McDaniel v. Qwest Communs. Corp.*, Civil Action No. 05 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11 (N.D. Ill. Aug. 29, 2011) (Pallmeyer, J.) ("Many courts have found the percentage-of-recovery method provides a good emulation of the real-world market value of attorneys' services provided on a contingent basis.").[7]

One of the primary advantages the percentage of the fund approach has over the lodestar approach—and a substantial reason why percentage of the fund more accurately represents the "market rate"—is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.) (TCPA class action awarding fees based on percentage of the fund). The percentage of the fund approach, by contrast, promotes early resolution and eliminates the incentive for plaintiffs' attorneys to inflate their billable hours by engaging in wasteful litigation. *See Synthroid II*, 325 F.3d at 979-80. By limiting attorneys' fees to a percentage of the common fund, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 C 7679, MDL No. 1083, 1996 U.S. Dist. LEXIS 5308, at *7 (N.D. Ill. Apr. 19, 1996) (explaining the "growing recognition that in a common fund situation . . . a fee based on a

---

[7] In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," explaining "the reasonableness of a fee cannot be assessed in isolation from what it buys"); *Synthroid II*, 325 F.3d at 979-80 ("The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."). Pursuant to the Court's individual case procedures, copies of all authorities that are only published on Westlaw and/or Lexis are attached as **Exhibit 3**.

8

129319

percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self- interest").

Along that line, the percentage of the fund approach preserves judicial resources by sparing the Court the cumbersome task of reviewing complicated and lengthy billing records. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). As one seminal case put it:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based on contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill*, 942 F. Supp. at 386 (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable").

For this reason, courts in this District routinely apply the percentage of the common fund method and acknowledge the advantages of this approach.

**B. Class Counsel's request is within the market rate.**

The Court must determine whether the fee award is reasonable in light of the prevailing market rate. *See, e.g., Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). To that end, a district court should "do [its] best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other

9

cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Other factors are relevant as well, including the risk counsel undertook in accepting the case and the quality of their performance. *In re Synthroid Mktg. Litig.* (*Synthroid I*), 264 F.3d 712, 721 (7th Cir. 2001).

The Seventh Circuit has already determined a 36% fee award net administration expenses is the prevailing market rate in TCPA class actions. *See Birchmeier*, 896 F.3d at 796-97 (affirming attorney fees in TCPA class action of 36% of the first $10 million). As explained below, each of these factors is met.

### 1. Analysis of the relevant market for legal services support the fee request.

Here, Class Counsel seeks a fee award of 36% of the net Settlement Fund. This percentage is consistent with standard contingency fee awards in the Seventh Circuit. Indeed, 36% of the net Settlement Fund is an amount that courts within the Seventh Circuit routinely award in TCPA and other class actions. *See, e.g.*, *Birchmeier*, 896 F.3d at 796-97 (TCPA class action affirming attorney fees of 36% of first $10 million); *Kolinek*, 311 F.R.D. at 503 (Kennelly, J.) (36% of fund net admin costs in TCPA class action); *In re Capital One*, 80 F. Supp. 3d at 807 (Holderman, J.) (36% of first $10 million of TCPA class settlement).[8]

Accordingly, the prevailing market rate for contingency fee cases generally, and for TCPA class actions in particular, both confirm the reasonableness of the requested fee award.

### 2. The risk of non-payment also supports the requested fee award.

The reasonableness of the requested fee award is further bolstered by the significant risk of non-payment Class Counsel faced at the outset. *See Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorneys' fees); *Synthroid I*, 264 F.3d at 718

---

[8] *See also Gaskill*, 160 F.3d at 362-63 (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation").

10

129319

(court should "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers . . . at the outset of the case (that is, when the risk of loss still existed)").

By taking this case on a contingency fee basis, Class Counsel assumed the risk they would receive no payment for their services. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").

As discussed in the motion for preliminary approval, Allstate raised several defenses that, if successful, would have precluded any recovery in this case. Specifically, Allstate argued: (1) it is not vicariously liable for the calls because it has no agency relationship with RMG or the vendors who placed the calls; (2) Plaintiff consented to the calls by actively participating and providing personal information during them, thereby encouraging the calls to continue; and (3) the claims are barred by the TCPA's regulatory DNC "safe harbor" because Allstate's do-not-call compliance procedures satisfy 47 C.F.R. § 64.1200(c)(2)(i) and the calls were made in error. *See* ECF No. 129 at 18-19; *see also Ex. 1* ¶ 12.

While Class Counsel remain confident Plaintiff would have prevailed, success—especially at the outset of the case—was by no means assured. To the contrary, the risk of loss was particularly acute given the hurdles posed by the need to, at a minimum, obtain crucial class discovery and win a contested class certification. *See Silverman*, 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Apart from jeopardizing any recovery for the class, litigating those issues would have required Class Counsel to expend significantly more time, money, and resources for which they would receive no compensation upon losing at summary judgment, class certification, or trial. *See Ex. 1* ¶¶ 12-13;

11

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-37 (N.D. Ill. 2011) (finding significant risk of nonpayment because counsel would have to overcome dispositive defenses and certify a class). As such, the considerable risk Class Counsel faced in prosecuting this contingency action illustrates the reasonableness of the requested award.

### 3. The benefits conferred also support the requested fee award.

The benefits to the class support the requested fee award. As noted above, each Settlement Class Member who files a valid claim will receive an estimated award of $1,000 based on $500 per call. This is an outstanding result when viewed against the potential "up to $500" per call recovery Plaintiff could have obtained had he proven a TCPA do-not-call violation at summary judgment or trial—*after* prevailing at class certification—which would have entailed years of additional litigation. *See* 47 U.S.C. § 227(c)(5).

Indeed, the estimated net recovery of $500 per call afforded by the Settlement compares favorably to other TCPA settlements that have received final approval. *See, e.g.*, *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015), ECF No. 160 (entering final approval of $11,268,058 settlement for slightly less than 2.5 million accounts); *In re Capital One*, 80 F. Supp. 3d at 809 (Holderman, J.) (granting final approval where each class member would be awarded $39.66); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) (final Approval of $46.98 to each claimant); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012), ECF Nos. 137 and 116 § II(H)(1) (approving $9 million settlement to benefit 6,079,411 class members); *Palmer v. Sprint Solutions, Inc.*, No. 09-cv-01211-JLR (W.D. Wash. Oct. 21, 2011), ECF No. 91 and 84 at 7-8

12

(approving $5.5 million settlement to benefit 18.1 million class members).

Moreover, the Settlement was achieved after Class Counsel spent nearly two-and-a-half years litigating this case, which entailed: (1) investigating and drafting three complaints; (2) engaging in significant motion practice, which included successfully opposing Allstate's motion to dismiss, briefing numerous motions to stay, and briefing a successful motion to compel Allstate to comply with discovery; (3) engaging in extensive party discovery as discussed above; (4) engaging in extensive non-party discovery, which entailed issuing six third-party subpoenas to various Allstate agencies and lead vendors, numerous conferrals to obtain compliance with those subpoenas, initiating separate proceedings in the Southern District of Ohio and the District of Massachusetts to enforce certain subpoenas, and months of contested motion practice in those proceedings; (5) preparing a detailed mediation statement setting forth Plaintiff's legal and factual theories; and (6) participating in a day-long mediation before Judge Denlow. *See Ex. 1* ¶¶ 4-6. These efforts, combined with the outstanding result, further supports the requested fee award.

For all these reasons, the requested fee award is reasonable and should be granted.

### C. Class Counsel's litigation expenses should be approved.

The Settlement provides Class Counsel may apply for payment of litigation expenses. To that end, Class Counsel seeks reimbursement for $40,150.43 of actual costs incurred in prosecuting this action. *See Ex. 1* ¶ 18. Because these charges were necessary in order to litigate and settle the case, Class Counsel's request for reimbursement of those expenses from the gross Settlement Fund is appropriate and should be approved.

### D. The Requested Incentive Award for Mr. Gebka should be approved.

Plaintiff also respectfully requests the Court grant an incentive award of $10,000 for his efforts on behalf of the class. Incentive awards compensating named plaintiffs for work done on

13

behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff's role in this litigation was crucial. Plaintiff sacrificed his time to prosecute this case on behalf of the 7,451 individuals who received the telemarketing calls at issue despite their telephone numbers already being registered on the National Do Not Call Registry. *See Ex. 1* ¶ 20. Plaintiff assisted with pre-suit investigation into the case, analyzed and verified the facts set forth in each of the three complaints prior to filing, engaged in extensive investigation and consultation with Class Counsel in connection with answering Allstate's discovery, analyzed and verified draft answers and supplemental answers to Allstate's discovery, undertook extensive efforts to locate (and, where necessary, obtain) records and other documents responsive to Allstate's discovery, stayed abreast of the proceedings throughout the litigation and settlement, took time off of work to be available for the entire the mediation, and reviewed and approved the Settlement. *Id.*

Moreover, the $10,000 Service Award sought here is comparable to or less than others approved by courts in similar TCPA disputes as well as those approved by federal courts throughout the country in analogous class actions. *See, e.g.*, *Allen v. JPMorgan Chase Bank, NA*, No. 13-cv-8285 (N.D. Ill. Oct. 21, 2015), ECF No. 93 ¶ 18 (approving $25,000 service award in TCPA class settlement); *Desai v. ADT Sec. Servs., Inc.*, No. 11-cv-1925 (N.D. Ill. Feb. 27, 2013), ECF No. 243 ¶ 20 (awarding $30,000 service awards in TCPA class settlement); *Ossola v. Am. Express Co.*, No. 1:13-cv-04836 (N.D. Ill. Dec. 2, 2016), ECF No. 379 ¶ 11 (awarding $10,000 to

14

TCPA class representative); *Martin v. Jth Tax*, No. 1:13-cv-6923, 2015 U.S. Dist. LEXIS 199180, at *8 (N.D. Ill. Sep. 23, 2015) (Shah, J.) (same).[9] The requested incentive award of $10,000 for Plaintiff is reasonable and should be approved.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully request the Court grant this Motion and award Class Counsel $1,602,000 in attorneys' fees, which represents 36% of the net Settlement Fund, plus $40,150.43 for counsel's out-of-pocket costs. Plantiff further requests that the Court approve an incentive award in the amount of $10,000.

Dated: June 8, 2022

Respectfully Submitted,

THOMAS GEBKA, individually and on behalf of all others similarly situated, Plaintiffs

By: /s/ Keith J. Keogh

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com

***Attorneys for Plaintiff and the Settlement Class***

---

[9] *See also Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, Civil Action No. 08cv3610 (CLW), 2015 U.S. Dist. LEXIS 64987, at *22-23 (D.N.J. May 18, 2015) (awarding $10,000 in TCPA case), *aff'd*, 639 F. App'x 880 (3d Cir. 2016); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *12 (D. Mont. Feb. 11, 2015) (approving $20,000 incentive award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464, at *4-5 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12-13 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV-ZLOCH, 2015 U.S. Dist. LEXIS 179532, at *8-9 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA settlement).

**CERTIFICATE OF SERVICE**

      I hereby certify that, on June 8, 2022, I caused a copy of the foregoing *Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award* to be served upon all counsel of record via electronic filing using the CM/ECF system.

                                                                    /s/ Keith J. Keogh

129319