**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS GEBKA, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:19-cv-06662 |
| v. | ) ) | Hon. Sharon J. Coleman |
| ALLSTATE INSURANCE COMPANY, a Delaware limited liability company, | ) ) ) | Mag. Jeffrey I. Cummings |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND SUPPORTING MEMORANDUM**

133703

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.   RELEVANT BACKGROUND ................................................................................... 4

     A.   Plaintiff's Allegations ...................................................................................... 4

     B.   Procedural History .......................................................................................... 5

     C.   Discovery ......................................................................................................... 7

     D.   The Proposed Settlement ................................................................................. 8

          1.   The Settlement Class ............................................................................ 9

          2.   Monetary relief for Settlement Class Members ............................... 9

          3.   *Cy pres* distributions ........................................................................ 10

          4.   Settlement Class release ..................................................................... 11

          5.   Class Representative Service Award .................................................. 11

          6.   Attorneys' fees and costs .................................................................... 11

III.   ARGUMENT ............................................................................................................ 12

     A.   The Settlement Approval Process .................................................................. 12

     B.   The Settlement Is Fair, Reasonable, Adequate, And Should Be Approved ............. 14

          1.   The Class has been adequately represented .................................... 14

          2.   The Settlement resulted from arm's length negotiations .............. 15

          3.   The proposed Settlement treats Settlement Class Members equitably ........ 17

          4.   The relief provided to the Settlement Class is more than adequate ............. 17

               a.   The risks of continued litigation, when viewed against the relief provided, weigh in favor of approval .................................................. 18

               b.   The proposed method of distribution is effective ............................. 21

               c.   The proposed attorney fee award and timing of payment support approval .............................................................................................. 21

IV.   CONCLUSION ......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
   No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012), ECF Nos. 116 and 137 .....................................18

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,
   No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
   (N.D. Ill. May 5, 2011).............................................................................................................20

*Allen v. JPMorgan Chase Bank, NA*,
   No. 13-cv-8285 (N.D. Ill. Oct. 21, 2015), ECF No. 93.........................................................23

*Aranda v. Caribbean Cruise Line, Inc.*,
   No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400
   (N.D. Ill. Mar. 2, 2017) ...........................................................................................................16

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................................................13

*Benzion v. Vivint, Inc.*,
   No. 12-61826-CIV-ZLOCH, 2015 U.S. Dist. LEXIS 179532
   (S.D. Fla. Feb. 23, 2015) .........................................................................................................24

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   896 F.3d 792 (7th Cir. 2018) .............................................................................................12, 22

*Braver v Northstar*,
   5:17-cv-00383-F (W.D. Okla. 2020), ECF No. 273 ...............................................................10

*Connor v. JPMorgan Chase Bank, N.A.*,
   No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015), ECF No. 160 .....................................17

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................................................................23

*Desai v. ADT Sec. Servs., Inc.*,
   No. 11-cv-1925 (N.D. Ill. Feb. 27, 2013), ECF No. 243 ........................................................23

*Facebook, Inc. v. Duguid*,
   141 S.Ct. 1163 (2021) ................................................................................................................6

*Facebook, Inc. v. Duguid*,
   No. 19-511 ..................................................................................................................................5

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ....................................................................13

*Fournigault v. Independence One Mortgage Corp.*,
    234 F.R.D. 641 (N.D. Ill. 2006) ...............................................................14

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ....................................................................22

*Goldsmith v. Technology Solutions Co.*,
    No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093,
    (N.D. Ill. Oct. 10, 1995) ..................................................................12, 20

*Hageman v. AT&T Mobility LLC*,
    No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595
    (D. Mont. Feb. 11, 2015) ..........................................................................23

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368
    (S.D. Ill. Dec. 13, 2018) ...........................................................................21

*Heekin v. Anthem, Inc.*,
    No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464
    (S.D. Ind. Nov. 20, 2012) .........................................................................23

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ...............................................................17

*In re Capital One TCPA Litigation*,
    12-cv-10064 (MDL No. 2416)
    (N.D. Ill. Feb. 12, 2015) ...........................................................................18

*In re Capital One*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .........................................................22

*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*,
    Master Docket No. 3:13-cv-1866-AWT
    (D. Conn. November 10, 2016) .................................................................10

*In re Southwest Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735
    (N.D. Ill. Aug. 26, 2013) .............................................................................3

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ....................................................................10

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................13

*Jonsson v. USCB, Inc.*,
  2015 U.S. Dist. LEXIS 69934
  (C.D. Cal. 2015) ..................................................................................10

*Keim v. ADF Midatlantic, LLC*,
  2020 U.S. Dist. LEXIS 49933
  (S.D. Fla. 2020) ....................................................................................10

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ..............................................................22

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) .........................................................22

*Kramer v. Autobytel*,
  No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
  (N.D. Cal. Jan. 27, 2012) ....................................................................18

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
  Civil Action No. 08cv3610 (CLW), 2015 U.S. Dist. LEXIS 64987
  (D.N.J. May 18, 2015) .........................................................................23

*Lee v. Global Tel*Link Corp.*,
  2018 U.S. Dist. LEXIS 163410
  (S.D. Cal. 2018) ...................................................................................10

*Legg v. AEO*,
  14-cv-02440-VEC (S.D.N.Y. 2017).....................................................10

*Leung v. XPO Logistics, Inc.*,
  326 F.R.D. 185 (N.D. Ill. 2018) ..........................................................10

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
  (S.D. Cal. Feb. 5, 2013) .......................................................................18

*Martin v. Jth Tax*,
  No. 1:13-cv-6923, 2015 U.S. Dist. LEXIS 199180
  (N.D. Ill. Sep. 23, 2015) ......................................................................23

*Martinez v. Medicredit, Inc.*,
  2018 U.S. Dist. LEXIS 81818
  (E.D. Mo. 2018) ...................................................................................10

iv

*Montoya v. PNC Bank, N.A.*,
    No. 14-20474-CIV, 2016 U.S. Dist. LEXIS 50315
    (S.D. Fla. Apr. 13, 2016) ........................................................................................2

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..............................................................................................17

*Ossola v. Am. Express Co.*,
    No. 1:13-cv-04836 (N.D. Ill. Dec. 2, 2016), ECF No. 379 ....................................23

*Palmer v. Sprint Nextel Corp.*,
    No. 09-cv-01211
    (W.D. Wash. Oct. 21, 2011), ECF Nos. 84 and 91 ..............................................18

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ................................................................................22

*Phillips Randolph Enters., LLC v. Rice Fields*,
    No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
    (N.D. Ill. Jan. 11, 2007) ........................................................................................20

*Rysewyk v. Sears Holdings Corp.*,
    Civil Action No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004
    (N.D. Ill. Jan. 29, 2019) ........................................................................................14

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................20

*Schulte v. Fifth Third Bank*,
    No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810
    (N.D. Ill. Sept. 10, 2010) ......................................................................................16

*Snyder v. Ocwen Loan Servicing, LLC,*
    No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926
    (N.D. Ill. May 14, 2019) ........................................................................................16

*Steinfeld v. Discover Fin. Svcs.*,
    12-cv-01118 (N.D. Cal.) ........................................................................................18

*Will v. Gen. Dynamics Corp.*,
    No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349
    (S.D. Ill. Nov. 22, 2010) ........................................................................................24

*Willett, et al. v. Redflex Traffic Systems, Inc., et al.*,
  Case No. 13-cv-01241-JCH-RHS (D.N.M. Oct. 24, 2016), Doc. 269.....................................10

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ............................................................14

*Wright v. Nationstar Mortg. LLC*,
  No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729
  (N.D. Ill. Aug. 29, 2016) ............................................................16

## Statutes

47 C.F.R. § 64.1200(c)(2) ............................................................1, 5

47 C.F.R. § 64.1200(c)(2)(i) ............................................................19

47 U.S.C. § 227(b)(3)(B)............................................................2

47 U.S.C. § 227(c) ............................................................1, 5

47 U.S.C. § 227(c)(5)............................................................2

47 U.S.C. § 227(c)(5)(B)............................................................2

## Rules

Fed. R. Civ. P. 12(b)(1)............................................................6

Fed. R. Civ. P. 12(b)(6)............................................................6

Fed. R. Civ. P. 23............................................................*passim*

## Treatises

4 William Rubenstein,
  *Newberg on Class Actions* § 13:53 (5th ed.) ........................................21

4 Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* § 11.41 (4th ed. 2002).................................13

*Manual for Complex Litigation* § 21.63 (4th ed. 2004) ............................................................13

*Robocalls & Telemarketing*, National Consumer Law Center,
  https://www.nclc.org/issues/robocalls-and-telemarketing.html
  (last visited Sept. 7, 2022) ............................................................10

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff Thomas Gebka ("Plaintiff") respectfully moves for final approval of the class action settlement ("Settlement") negotiated between Plaintiff and Defendant Allstate Insurance Company ("Allstate" or "Defendant") (collectively, the "Parties").  *See Settlement Agreement* ("Agreement"), attached as **Appendix 1**.

Mr. Gebka alleges Allstate violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and the TCPA implementing regulations, 47 C.F.R. § 64.1200(c)(2), by placing telemarketing calls without prior express written invitation or permission to persons whose telephone numbers were registered on the national Do-Not-Call Registry.  Allstate denies these allegations.

The Settlement provides $4,500,000 in a non-reversionary Settlement Fund for a Settlement Class of approximately 7,451 individuals whose telephone numbers were registered on the national Do Not Call registry and to whom Allstate or those allegedly acting on its behalf made at least two telemarketing calls directed by Richardson Marketing Group and related entities.

If approved, each Settlement Class Member who files a valid claim will receive a *pro-rata* distribution based on the number of calls to the person. The Class Notice advised the class members that Plaintiff estimated every class member who files a valid claim will receive $1,000 based on $500 per call.[1] *See Declaration of Jay Geraci* at Exs. C-F, attached as **Appendix 2**.  As explained below, each class member with a valid claim will receive *at least* $1,000, with several

---

[1] The Settlement provides $500 per call and the minimum number of calls is two.  If there is not sufficient funds to pay $500 per call, each class member will receive a *pro-rata* distribution payment per call after deduction of administration costs, reimbursed expenses, an incentive award, and attorneys' fees.  As explained below, Plaintiff separately filed a fee petition, and there is no clear sailing agreement for fees or an incentive award.

hundred class members receiving more since they had more than two calls (the highest calculated claim is $9,000 for 18 calls at $500 per call).  *See App. 2* ¶ 17.

This is an excellent result, especially in light of the fact the class' Do Not Call Claim[2] provides for "*up to* $500" in statutory damages per violation, which requires at least two calls to constitute a violation.  In other words, valid claimants received at least twice the maximum statutory damages for their claim, putting aside treble damages if willfulness is proven (even then the most the claim would be worth is $1,500).  47 U.S.C. § 227(c)(5)(B) (emphasis added).[3]

On April 25, 2022, the Court granted preliminary approval of the Settlement, finding the Settlement within the range of reasonableness, and thus, that the class should be given notice of the Settlement and an opportunity to object to it or opt out.  *See* ECF No. 137.

Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated via mail to 7,390 members of the Settlement Class (*i.e.* 99.2% of the Settlement Class).  *See App. 2* ¶¶ 5-6, 9.  The notice was then mailed a second time to class members who had not yet submitted a claim.  *Id.* ¶ 12.  Then two weeks before the claims deadline, a reminder notice was e-mailed to class members who had yet to submit a claim.  *Id.* ¶ 13.  The notice campaign was a tremendous success, achieving a claims rate for valid claims of almost 15% (14.9%), which supports the reasonableness of the Settlement.  *See id.* ¶ 16; *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2016 U.S. Dist. LEXIS 50315, at *73 (S.D. Fla. Apr. 13, 2016) ("claims rates in consumer class action settlements 'rarely' exceed 7%, 'even with the most extensive notice

---

[2] Plaintiff amended the complaint to add a prerecorded call claim, but based on discovery, that claim will be dismissed without prejudice for the class and is not being released by the class as part of the Settlement.

[3] Other claims under the TCPA mandate $500 per violation, 47 U.S.C. § 227(b)(3)(B), but the DNC claims can provide substantially less since the TCPA provides for "up to $500" per DNC violation, which requires two calls, 47 U.S.C. § 227(c)(5).  Thus, it is possible for the Court or jury to find a DNC violation and award a nominal statutory damage.

campaigns'") (collecting cases).[4]

On the same date the initial notice was mailed, Plaintiff filed his motion for attorney fees and incentive award (ECF. No. 138), which was posted to the settlement website for class members to review. *See* http://www.allstatetcpasettlement.com/case-documents.aspx (last visited Sept. 7, 2022); *see also App. 2* ¶ 14. The class notice that was sent three times explicitly informed the class members of the exact amount of fees sought, both as a percentage of the fund and the exact dollar amount, as well as the amount of the incentive award sought. *See App. 2* at Exs. C-D ("Plaintiff will petition for a service award not to exceed $10,000 for Plaintiff's work in representing the Class and Class Counsel's fees up to 36% of the Settlement Fund after administration expenses, which is $1,602,000 plus reasonable expenses."); *id.* at Ex. E-F ("Class Counsel will ask the Court to approve payment of up to 36% of the Settlement Fund after class administration costs, which is $1,602,000 for attorneys' fees, plus reasonable expenses. Class Counsel will also ask the Court to approve payment of $10,000 to Plaintiff for his services as Class Representative if permitted by law.").

No class member objected to any portion of the Settlement and no class member excluded themselves. *See App. 2* ¶¶ 18-19. To be sure, this complete absence of objections points to the reasonableness of the Settlement. *See In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Aug. 26, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, is a great result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of these claims.

---

[4] Pursuant to the Court's individual case procedures, copies of all authorities that are only published on Westlaw and/or Lexis are attached as **Appendix 5**.

For the foregoing reasons, and as more fully detailed below, the Settlement meets the standards for final approval and should therefore be approved.

## II.     RELEVANT BACKGROUND

### A.     Plaintiff's Allegations.

Plaintiff alleges Allstate solicits potential customers through telemarketing calls advertising and encouraging the purchase of Allstate insurance. *Second Amended Compl.* ¶ 29 (ECF No. 95). Specifically, Allstate authorized its agencies to solicit new customers through telemarketing calls, and advised and authorized them to engage third-party vendors to place the calls. *Id.* ¶¶ 23-24, 86-88, 93-95, 105. The Allstate Agencies contracted with third-party telemarketing vendors who, in turn, directed the call center to call. *Id.* ¶¶ 26-28, 98, 109.

One such vendor was Richardson Marketing Group ("RMG"). Plaintiff alleges Allstate endorsed RMG to Allstate agencies and was involved in obtaining special group pricing to incentivize them to use RMG. *Id.* ¶¶ 96-97. Plaintiff alleges further that Allstate agencies entered into over eighty lead-generation contracts with RMG during the class period. *Id.* ¶ 98. Pursuant to those contracts, RMG directed its call centers to place telemarketing calls to Plaintiff and the other Settlement Class Members. *Id.* ¶ 46. Plaintiff has no prior relationship with Allstate or any Allstate agency, *id.* ¶ 77, and his telephone number has been on the National Do Not Call ("DNC") registry since more than thirty-one days before the calls to his number began, *id* ¶ 33. The same is true of the other Settlement Class Members.

On August 8, 2019, Plaintiff received three telemarketing calls about Allstate insurance quotes, two of which said they were "on behalf of Allstate." *Id.* ¶¶ 34, 36, 37, 39, 42. The second call was transferred to the Brian Saving Allstate agency, which spoke to him about a quote. *Id.* ¶ 40. Later that day, the agency sent Plaintiff a quote for Allstate insurance. *Id.* ¶ 41. On September

4

18, 2019, Plaintiff received another call promoting Allstate insurance from someone who said he was "calling on behalf of Allstate." *Id.* ¶¶ 43-44. All of these calls were placed by call centers directed by RMG, who was hired by the Brian Saving Allstate agency. *Id.* ¶ 46.

According to Plaintiff, the calls were made without his or the other Settlement Class Members' prior express written invitation or permission and violated the Do Not Call provisions of the TCPA and its implementing regulations, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

   **B.    Procedural History.**

On October 8, 2019, Plaintiff filed a Class Action Complaint alleging the calls violated the TCPA because they used an automatic telephone dialing system ("ATDS"), *see* ECF No. 1 ¶¶ 1-2, 12-13, 15-35, 37, 52-57, and because the telephone numbers called were registered on the National Do-Not-Call registry at the time of the calls, *see id.* ¶¶ 15-25, 28-35, 37, 58-62. On November 26, 2019, Allstate filed its Answer and affirmative defenses to the complaint denying Plaintiff's allegations. ECF No. 20.

On November 11, 2020, Plaintiff sought leave to file an amended complaint adding a claim that a prerecorded call believed to be made on behalf of Allstate that used an artificial and/or prerecorded voice violated the TCPA and implementing regulations. *See* ECF No. 58. Leave to amend was granted, *see* ECF No. 77, and Plaintiff filed an Amended Class Action Complaint adding the claim for the prerecorded calls on March 31, 2021, *see* ECF No. 79.

Meanwhile, on November 19, 2020, Allstate filed a motion to stay the case pending the United States Supreme Court's decision regarding the TCPA's definition of an ATDS in *Facebook, Inc. v. Duguid*, No. 19-511. *See* ECF No. 64. After the stay motion was fully briefed, *see* ECF Nos. 71-72, *Facebook* was decided on April 1, 2021 and the motion was denied as moot, *see* ECF No. 101.

5

Allstate then moved to dismiss the amended complaint on April 19, 2021. ECF No. 87. On May 18, 2021, Plaintiff sought leave to file a second amended complaint to, *inter alia*, remove the ATDS claim based on the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), which clarified the definition of ATDS. *See* ECF No. 92.

Leave to amend was granted, *see* ECF No. 94, and Plaintiff filed the currently-operative Second Amended Class Action Complaint on May 20, 2021, *see* ECF No. 95. On June 3, 2021, Allstate moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing it is not vicariously liable for the calls and Plaintiff lacks Article III standing. *See* ECF Nos. 96-97.

On June 10, 2021, Plaintiff initiated another action in the United States District Court for the District of Massachusetts to enforce his third-party subpoena against Everquote, Inc., the lead vendor associated with certain calls.

After the Parties fully briefed the motion to dismiss, *see* ECF Nos. 108, 110-111, and Plaintiff subsequently filed a notice of supplemental authority, *see* ECF No. 112, Allstate moved to stay discovery pending the ruling on the motion to dismiss, *see* ECF No. 113. On September 1, 2021, the case was stayed over Plaintiff's objection. *See* ECF No. 114. Plaintiff filed a motion to reconsider the stay. *See* ECF No. 115.

On October 25, 2021, the motion to dismiss the Second Amended Complaint was denied. *See* ECF No. 119. Later the same day, the stay was lifted and the motion to reconsider was denied as moot. *See* ECF No. 120. On November 15, 2021, Allstate filed its Answer and Affirmative Defenses to the Second Amended Complaint denying Plaintiff's allegations. *See* ECF No. 124.

The Parties subsequently agreed to mediate, and the case was again stayed on December 13, 2021. *See* ECF Nos. 125-126.

The mediation took place on February 10, 2022 before the Honorable Morton Denlow (ret.)

of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). In the weeks prior to the mediation, the Parties submitted detailed briefs setting forth their respective views on the <u>merits</u> of their cases. *See Declaration of Keith J. Keogh* ¶ 5 ("Keogh Decl."), attached as **Appendix 3**. At the day-long mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class. *Id.* ¶ 6. With the assistance of Judge Denlow, and the day of arm's-length negotiations, the Parties reached an agreement-in-principle on the material terms of a class-wide settlement. *Id.*

Following the mediation, the Parties continued extensive negotiations for more than a month on their remaining points of dispute, *id.* ¶ 6, which culminated in the fully-executed Agreement for which the Parties now seek final approval.

### C. Discovery.

On December 13, 2019, Plaintiff issued third-party subpoenas for documents to Brian Saving and the Brian Saving Allstate Agency.

On December 27, 2019, Plaintiff issued third-party subpoenas for documents to RMG and its CEO, Deryck Richardson. As noted above, Plaintiff was forced to initiate a separate action in the United States District Court for the Southern District of Ohio on January 28, 2020. Plaintiff pursued the matter for the next five months until his motion to compel which had initiated that action was granted on May 22, 2020, and he thereafter finally obtained compliance with the subpoenas including production of crucial call records.

On January 29, 2020, Plaintiff issued his First Set of Interrogatories, Document Requests, and Requests to admit to Allstate, which Allstate timely answered. Allstate served supplemental answers to that discovery on April 10, 2020. On August 21, 2020, Plaintiff filed a motion to compel Allstate to further supplement the interrogatories regarding consent and produce

unredacted class data. *See* ECF No. 49. The motion was granted in part and denied in part on March 4, 2021. *See* ECF Nos. 74-75. Allstate timely supplemented those interrogatory answers on March 25, 2021. The Parties conferred about the supplemental answers, resulting in Allstate further supplementing them on April 5, 2021, and following a subsequent conferral about the adequacy of those answers Allstate supplemented them again on April 19, 2021.

On February 27, 2020, Allstate served Plaintiff with interrogatories, document requests, and requests to admit, Plaintiff timely answered. Plaintiff served supplemental answers to various interrogatories on August 10, 2020.

On October 13, 2020, in order to obtain discovery about the prerecorded voice telemarketing call he received after the lawsuit was filed, Plaintiff issued third-party subpoenas for documents to Everquote, Inc., the lead vendor associated with the call, as well as to Matthew Wigington and The Wigington Agency, which was the Allstate agency believed to be associated with that call and others. After several conferrals, Plaintiff was able to obtain compliance with the Wigington subpoenas.

Plaintiff was forced to initiate a separate action to enforce the subpoena in the United States District Court for the District of Massachusetts, which he did on June 9, 2021.

On August 9, 2021, Plaintiff served Allstate with a Second Set of Interrogatories, Document Requests, and Requests to admit. When the stay entered days later was lifted, Plaintiff served Allstate with a Third Set of Interrogatories on November 16, 2021.

Plaintiff retained a database expert to analyze the call records obtained from RMG. The Parties subsequently exchanged their experts' results in preparation for the mediation.

### D. The proposed Settlement.

The Settlement's details are contained in the Agreement signed by the Parties. *See App. 1.*

The following summarizes the Agreement's terms:

### 1. The Settlement Class.

The Settlement Class preliminarily approved by the Court is defined as follows:

The approximately 7,451 individuals to whom: (a) Allstate or anyone allegedly acting on its behalf made at least two telephone calls based on leads provided by, through, and/or directed by Richardson Marketing Group and related entities within a 12-month period (b) promoting Allstate insurance (c) between October 8, 2015 and present (d) where the person's telephone number was registered on a Do Not Call registry for more than 31 days before the first call.

ECF No. 137 § 5.[5]

### 2. Monetary relief for Settlement Class Members.

The Settlement requires Allstate to create a non-reversionary Settlement Fund of $4,500,000, *see App. 1* §§ 2.31, 5.1, 9.1, from which each Settlement Class Member who files a valid claim will receive a maximum of $500.00 per call or, if insufficient funds exist to,pay $500.00 per call, a *pro rata* distribution (based on the number of calls to the person) after payment of attorneys' fees and costs, any incentive award approved by the Court, and the other Settlement Costs incurred, *see App. 1* §§ 2.30, 2.35, 5.2, 11.1, 12.1. No amount of the Settlement Fund will revert to Allstate. *See id.* § 12.2.

As noted above, even with the a claim rate of almost 15%, each class member with a valid claim will receive *at least* $1,000, with several hundred of them receiving more since they had more than two calls (the highest calculated claim is $9,000 for 18 calls at $500 per call). *See App. 2* ¶ 17. Checks issued to Settlement Class Members shall remain valid for 120 days from the date of issuance. *App. 1* § 12.1.

---

[5] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call), all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section **13.1** of the Settlement Agreement, and individuals whose claims would be or are included in any other settlement. *See* ECF No. 137 § 5.

### 3. *Cy pres* distributions.

After the expiration date of the checks distributed, all money remaining in the Settlement Fund will be donated to a *cy pres* beneficiary. *App. 1* § 12.1.

Subject to Court approval, Plaintiff suggested in his preliminary approval motion any such funds be sent to the National Consumer Law Center ("NCLC") and earmarked for working to safeguard the protections of the TCPA. One would be hard pressed to find another organization more closely aligned with the class's interests than NCLC. *See Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) (TCPA class action rejecting Legal Assistance Foundation of Metropolitan Chicago as a *cy pres* recipient because, although court acknowledged it was "a worthy organization," it was not closely related to class's interests and "does not directly or indirectly benefit" those interests).[6] The full class notice and reminder email notice identified this organization as Plaintiff's suggestion. *See App. 2* at Exs. E-F. No Settlement Class Member has objected. *See App. 2* ¶ 19.

---

[6] NCLC has fought to preserve the TCPA's protections for years before Congress, before the Federal Communications Commission ("FCC"), and before the courts as an *amicus curiae*, and is a leading consumer advocacy organization on TCPA matters. Since 2014, it has commented on almost every major proceeding, and many minor proceedings, before the FCC concerning the TCPA. *See Robocalls & Telemarketing*, National Consumer Law Center, https://www.nclc.org/issues/robocalls-and-telemarketing.html (last visited Sept. 7, 2022). NCLC staff meet regularly with staff of the former and current FCC Chairman's office as well as with staff of other Commissioners' office and staff of the Consumer and Governmental Affairs Bureau. *Id.* NCLC staff have also testified before both the House of Representatives and the Senate concerning the TCPA. *Id.* In addition, NCLC has submitted amicus briefs to the Supreme Court and Federal Courts of Appeal in numerous TCPA cases. *Id.* Thus, NCLC's work reasonably approximates the interests pursued by the class. Given NCLC's proven record of TCPA advocacy, numerous courts have approved NCLC as a *cy pres* recipient in TCPA class actions, often over defendant's objection. *See e.g.*, *Braver v. Northstar*, 5:17-cv-00383-F (W.D. Okla. 2020), ECF No. 273; *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 205-06 (N.D. Ill. 2018); *Keim v. ADF Midatlantic, LLC*, 2020 U.S. Dist. LEXIS 49933, *11 (S.D. Fla. 2020); *Lee v. Global Tel*Link Corp.*, 2018 U.S. Dist. LEXIS 163410, *23-25 (S.D. Cal. 2018); *Martinez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS 81818, *4-5 (E.D. Mo. 2018); *Jonsson v. USCB, Inc.*, 2015 U.S. Dist. LEXIS 69934, *30 (C.D. Cal. 2015); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS, Doc. 269 (D.N.M. Oct. 24, 2016); *see also Legg v. AEO*, 14-cv-02440-VEC (S.D.N.Y. 2017) (TCPA) (approving NCLC for TCPA class case); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-1866-AWT (D. Conn. Nov. 10, 2016) (Same).

### 4. Settlement Class release.

In exchange for the benefits allowed under the Settlement, the Settlement Class Members will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims "that arise out of or relate in any way to Allstate or anyone allegedly acting on its behalf making telephone calls based on leads provided by, through, and/or directed by Richardson Marketing Group and related entities where the person's telephone number was registered on a Do Not Call registry for more than 31 days before the first call." *App. 1* § 16.2. Further, the prerecorded call claim will not be released and that claim will be dismissed without prejudice. In addition, and separately, Plaintiff will release any and all individual claims as alleged in the Second Amended Complaint, including the claims for prerecorded calls. *Id.*

### 5. Class Representative Service Award.

The Agreement provides Plaintiff may petition the Court for a Service Award. *App. 1* § 6.2. There is no clear sailing provision as to this request, *see id.*, and neither Court approval nor the amount of the Service Award is a condition of the Settlement, *id.* § 6.3. Given Plaintiff's extensive efforts prosecuting this action for the Settlement Class, Plaintiff has requested a Service Award of $10,000.00. *See* ECF No. 138. Each iteration of the Class Notice advised the Settlement Class of Plaintiff's request, *see App. 2* at Exs. C-D ("Plaintiff will petition for a service aware not to exceed $10,000 for Plaintiff's work in representing the class"), *id.* at Ex. E-F ("Class Counsel . . . will ask the Court to approve payment of $10,000 to Plaintiff for his services"), and there was no objection, *see App. 2* ¶ 19.

### 6. Attorneys' fees and costs.

At the same time as notice was initially sent, Class Counsel applied to the Court for an award of attorneys' fees and costs. *See* ECF No. 138. The motion was posted to the settlement

website to allow class members the ability to review the request. As addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 36% after administration costs are deducted, plus reasonable expenses, in common-fund class settlements including TCPA class actions. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million).

This amount is appropriate to compensate Class Counsel for the work they have performed in procuring a settlement for the Settlement Class.

As with the Service Award, there was no clear sailing agreement on attorneys' fees or costs. Further, each iteration of the Class Notice informed the Settlement Class Members that Class Counsel will seek 36% of the fund net administration costs. *See App. 2* at Exs. C-D ("Plaintiff will petition for . . . Class Counsel's fees up to 36% of the Settlement Fund after administration expenses, which is $1,602,000 plus reasonable expenses."); *id.* at Ex. E-F ("Class Counsel will ask the Court to approve payment of up to 36% of the Settlement Fund after class administration costs, which is $1,602,000 for attorneys' fees, plus reasonable expenses."). There was no objection. *See App. 2 ¶ 19.*

## III. ARGUMENT

### A. The settlement approval process.

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion" There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995

U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); 4 Herbert B. Newberg & Alba Conte,

*Newberg on Class Actions* § 11.41 (4th ed. 2002) (same).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage

settlements, particularly in class actions and other complex matters, where the inherent costs,

delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class

could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary
> resolution of litigation through settlement. In the class action context in particular,
> there is an overriding public interest in favor of settlement. Settlement of the
> complex disputes often involved in class actions minimizes the litigation expenses
> of both parties and also reduces the strain such litigation imposes upon already
> scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980)

(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873,

875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts

naturally favor the settlement of class action litigation."); Newberg & Conte, *supra*, § 11.41 (citing

cases).

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure

for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected
class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class
members may be heard regarding the settlement, and at which evidence and
argument concerning the fairness, adequacy, and reasonableness of the
settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its

role as the guardian of class interests. The first two steps in this process have occurred.  This

Motion requests that the Court take the third and final step by granting final approval.

**B.    The Settlement is Fair, Reasonable, Adequate, and Should be Approved.**

When deciding whether to grant final approval, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equitably; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *accord Rysewyk v. Sears Holdings Corp.*, No. 1:15-cv-4519-MSS, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019).[7] Each of these factors support approval.

**1.    The Class has been adequately represented.**

Rule 23(e)(2) analyzes whether the named plaintiff and class counsel have adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied if plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class's; and (3) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

To begin, Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the class she seeks to represent. Plaintiff and the other Settlement Class Members all share identical claims arising from a common course of conduct: Allstate or someone allegedly acting on its behalf making telemarketing calls to the class based on leads provided by, through, and/or directed by Richardson Marketing Group where their telephone numbers were registered on the Do Not Call

---

[7] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

registry for more than 31 days before the first call. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, assisting his attorneys in investigating the Settlement Class's TCPA claims, reviewing and approving each of the three class action complaints prior to filing, answering written discovery, regularly conferring with his attorneys throughout the litigation, and reviewing and approving the Agreement prior to signing it. *See App. 3* ¶ 14.

The third prong of the adequacy analysis is also satisfied because Class Counsel have extensive experience in complex litigation and consumer class actions involving TCPA claims, and have been found adequate and appointed class counsel in scores of cases arising under the TCPA and various other consumer protection statutes. *See App. 3* ¶¶ 3, 15-55. Drawing on this experience, proposed Class Counsel were able to extensively evaluate the merits of this case, Allstate's defenses, the benefits of the proposed Settlement, and the attendant risks of further litigation. *Id.* ¶¶ 9, 11-12.

Class Counsel have vigorously pursued the class claims from the outset by investigating Plaintiff's claims, drafting and filing several well-pleaded complaints, briefing and defeating a motion to dismiss, taking party and non-party discovery into merits and class issues, litigating a number of discovery disputes (including initiating two separate cases in other districts to enforce subpoenas), and preparing a detailed mediation statement that spelled out Plaintiff's factual and legal theories. *Id.* ¶¶ 4-5. These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members who submit valid claims with significant cash relief of at least $1,000. As such, the Court should find the adequacy of representation prong met.

### 2. The Settlement resulted from arm's length negotiations.

The second Rule 23(e)(2) factor focuses on whether the Settlement is the product of an

"arm's length" transaction. As detailed above, it was only after actively litigating this matter for nearly two-and-a-half years and conducting extensive party and non-party written discovery that the Parties were prepared to discuss settlement. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *42 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation . . . and engaged in discovery" prior to reaching settlement). Those discussions entailed a day-long mediation assisted by Judge Denlow (Ret.), who is a well-respected and experienced mediator, before the Parties agreed on the material terms of the Settlement. *See App. 3* ¶¶ 5-6. Once those terms were in place, another month negotiating the finer details of the Agreement before executing it on April 9, 2022. *Id.* ¶ 6.

The arms-length nature of the Parties' discussions is also borne out by the terms of the Agreement itself. The Settlement is non-reversionary, provides significant cash payments to all members of the Settlement Class who submit valid claims, and is devoid of any provision that could indicate fraud or collusion such as a "clear sailing" or "kicker" clause related to attorney's fees or the incentive award. *See Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5 (N.D. Ill. Sept. 10, 2010) (noting courts "presume the absence of

fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### 3. The proposed Settlement treats Settlement Class Members equitably.

The next Rule 23(e)(2) consideration supports approval where the proposed settlement treats all class members equitably. Here, each Settlement Class Member has identical TCPA claims against Allstate, which is why they receive identical treatment under the proposed Settlement. Specifically, every Settlement Class Member who submits a valid claim is entitled to an equal amount per call. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). Because there is no disparate treatment between members, the Settlement merits approval.

### 4. The relief provided to the Settlement Class is more than adequate.

Allstate will pay $4,500,000 into a non-reversionary Settlement Fund for a class of approximately 7,451 individuals. As noted above, every class member who filed a valid claim will receive at least $1,000 based on $500 per call, even after deductions for administration costs, reimbursed expenses, an incentive award, and attorneys' fees.[8] "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (cleaned up).

This Settlement exceeds what the class members would receive if they prevailed on their claim since the DNC claim provides up to $500 per violation and the statute requires two calls to state a violation. It also exceeds most other TCPA class actions settlements, including non-DNC claims where the statute provides for $500 per call. *See, e.g., Connor v. JPMorgan Chase Bank,*

---

[8] Every Settlement Class Member received at least two calls. Of those who filed valid claims, 319 Settlement Class Members received more than two calls, and one class member would be entitled to $9,000 for 18 calls. *See App. 2* ¶ 17.

*N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015), ECF No. 160 (Final Judgment and Order of Dismissal entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member would be awarded $39.66) (Holderman, J.); *Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at ECF No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012), ECF Nos. 116 and 137 (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011), ECF Nos. 84 and 91 (approving $5.5 million settlement to benefit 18.1 million class members).

In sum, the relief provided by the proposed Settlement is more than adequate and exceeds the recoveries provided by other TCPA class settlements found to be fair, adequate and reasonable, making the Settlement here a great result for the Class.

<blockquote>

**a. The risks of continued litigation, when viewed against the relief provided, weigh in favor of approval.**

</blockquote>

When evaluating the adequacy of class relief, a court should first compare the costs, risks, and delay of trial against the immediate benefits afforded by the proposed settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment. This sub-factor weighs heavily in favor of approval because the proposed Settlement provides immediate relief to Settlement Class Members while avoiding potentially years of costly, complex litigation, and appeals and the

associated risk.

While Plaintiff remains confident in the strength of his claims, Allstate denied all of the material allegations while raising myriad legal and factual defenses that, if successful, could preclude any recovery for the Settlement Class. Allstate's primary defense is that it is not vicariously liable for the calls because it has no agency relationship with RMG or the vendors who placed the calls. *See* ECF No. 124 at 44 (¶¶ 5-6). While Plaintiff is confident he would prevail on this issue, it's a highly-fact-intensive issue with no guarantee of success at trial.

In addition, Allstate intended to avoid liability by proving, among other things, that: (1) Plaintiff consented to the calls by actively participating and providing personal information during them, thereby encouraging the calls to continue, *see* ECF No. 124 at 44 (¶¶ 4, 10); (2) the claims are barred by the TCPA's regulatory DNC "safe harbor" because Allstate's do-not-call compliance procedures satisfy 47 C.F.R. § 64.1200(c)(2)(i) and the calls were made in error, *see id.* at 45 (¶ 13). *See also id.* at 44-45 (¶¶ 3, 7, 8, 11-12, 14, 16) (asserting additional defenses).

A victory on any of those defenses could doom the case in its entirety or, at the very least, greatly reduce the size of the proposed class and preclude any recovery for scores of class members who stand to benefit from the Settlement.

And, before resolving Allstate's substantive defenses, Plaintiff would first need to prevail at class certification, which would entail extensive motion practice on several hotly contested issues with no guarantee of success. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (directing courts to consider the likelihood of certification when evaluating this sub-factor). Though Plaintiff maintains this case is ideal for class certification, success is certainly not guaranteed and Allstate intends to vigorously oppose. *See* ECF No. 124 at 44 (¶ 2, asserting as a defense that class cannot be certified).

Finally, even if Plaintiff prevailed at class certification and obtained a complete victory on the merits, Allstate intended to seek reduction of damages based on the argument an award of up to $500 per call would violate its right to substantive and procedural due process and is barred by the Fifth, Eight, and Fourteenth Amendments to the United States Constitution. *See* ECF No. 124 at 45 (¶ 9). This, too, presents a significant risk to the Settlement Class, as some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g.*, *Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendants' due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendants'] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member represents an excellent result. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g.*, *Goldsmith*, 1995 U.S. Dist. LEXIS 15093 at *14-15 ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus,

this sub-factor weighs in favor of approval.

### b. The proposed method of distribution is effective.

The next sub-factor analyzes the whether the proposed method for distributing relief to the class is effective. Fed. R. Civ. P. 23(3)(2)(C)(ii). Effective distribution methods are those that "get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while ensuring "only legitimate claims" are paid. 4 William Rubenstein, *Newberg on Class Actions* § 13:53 (5th ed.).

Here, class members only needed to complete a short claim form requiring basic information, which could be submitted via online, mail or phone by providing their unique Claim ID found on each Mail Notice that was sent. *See App. 1* §§ 10.2(C); *id.* at Ex. 3. Notice included two rounds of mailed notice and a third reminder notice via email to those Settlement Class Members who had not already submitted a claim. In addition, each Settlement Class Member was able to choose whether to receive payment via check or electronically. *See id.* §§ 2.12, 2.18, 10.2(A), 10.2(C); *id.* at Ex. 1 (last page of E-Mail Notice containing claim form); *id.* at Ex. 3 (last page of Mail Notice containing claim form).

This proposed method of distribution is about as simple and expeditious as a claims-made settlement can get while also ensuring only legitimate claims are paid. The process set forth in the Agreement here is clearly effective and weighs in favor of final approval.

### c. The proposed attorney fee award and timing of payment support approval.

The final relevant sub-factor[9] analyzes the adequacy of the class relief in light of "the terms

---

[9] The fourth sub-factor directs courts to consider any side deals or separate agreements reached by the parties in connection with the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(c)(iv), (e)(3). Because the Parties have reached no such agreement, *see App. 3* ¶ 10, this sub-factor does not factor into the analysis, *see, e.g.*, *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *20 (S.D. Ill. Dec. 13, 2018) ("The parties have not identified, nor is the Court aware of, any agreement—

of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Here, the Agreement does not guarantee any set fee, nor does it provide that Allstate has agreed to any set fee amount. Instead, Class Counsel has filed a fee petition requesting that the Court approve a fee award of 36% of the Settlement Fund (excluding administration and other Settlement Costs incurred)—an amount courts within the Seventh Circuit routinely award in TCPA and other class actions. *See, e.g.*, *Birchmeier*, 896 F.3d at 796-97 (affirming attorney fees in TCPA class action of 36% of first $10 million); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (Kennelly, J.) (36% of fund net admin costs in TCPA class action); *In re Capital One* 80 F. Supp. 3d 781, 807 (N.D. Ill. 2015) (Holderman, J.) (36% of first $10 million of TCPA class settlement).[10]

Class Counsel filed their fee petition on the date Notice was initially sent, and as noted above, the petition was immediately posted on the Settlement Website allowing Class Members to review or object. *See* http://www.allstatetcpasettlement.com/case-documents.aspx (last visited Sept. 7, 2022). Further, each iteration of Class Notice mailed to each class member advised the class of the exact amount of fees sought, both as a percentage and dollar amount. *See App. 2* at Exs. C-D ("Plaintiff will petition for . . . Class Counsel's fees up to 36% of the Settlement Fund after administration expenses, which is $1,602,000 plus reasonable expenses."); *id.* at Ex. E-F ("Class Counsel will ask the Court to approve payment of up to 36% of the Settlement Fund after class administration costs, which is $1,602,000 for attorneys' fees, plus reasonable expenses.").

---

other than the Settlement itself—that must be considered pursuant to Rule 23(e)(3). This factor is neutral.").

[10] *See also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (holding attorneys' fees awarded to class counsel should not exceed at most a half of the total amount of money going to class members); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation").

No class member objected to the requested fee. *See App. 2* ¶ 19.

Similarly, no class member has objected to Plaintiff's request for a $10,000 service award for his role in this litigation, which was crucial. *See App. 2* ¶ 19. Plaintiff sacrificed his time to prosecute this case on behalf of the class. *See App. 3* ¶ 14. Plaintiff assisted with pre-suit investigation into the case, analyzed and verified the facts set forth in each of the three complaints prior to filing, engaged in extensive investigation and consultation with Class Counsel in connection with answering Allstate's discovery, analyzed and verified draft answers and supplemental answers to Allstate's discovery, undertook extensive efforts to locate (and, where necessary, obtain) records and other documents responsive to Allstate's discovery, stayed abreast of the proceedings throughout the litigation and settlement, took time off of work to be available for the entire the mediation, and reviewed and approved the Settlement. *Id.*

Moreover, the $10,000 Service Award sought here is comparable to or less than others approved by courts in similar TCPA disputes as well as those approved by federal courts throughout the country in analogous class actions. *See, e.g.*, *Allen v. JPMorgan Chase Bank, NA*, No. 13-cv-8285 (N.D. Ill. Oct. 21, 2015), ECF No. 93 ¶ 18 (approving $25,000 service award in TCPA class settlement); *Desai v. ADT Sec. Servs., Inc.*, No. 11-cv-1925 (N.D. Ill. Feb. 27, 2013), ECF No. 243 ¶ 20 (awarding $30,000 service awards in TCPA class settlement); *Ossola v. Am. Express Co.*, No. 1:13-cv-04836 (N.D. Ill. Dec. 2, 2016), ECF No. 379 ¶ 11 (awarding $10,000 to TCPA class representative); *Martin v. Jth Tax*, No. 1:13-cv-6923, 2015 U.S. Dist. LEXIS 199180, at *8 (N.D. Ill. Sep. 23, 2015) (Shah, J.) (same).[11] The requested incentive award of $10,000 for

---

[11] *See also Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, Civil Action No. 08cv3610 (CLW), 2015 U.S. Dist. LEXIS 64987, at *22-23 (D.N.J. May 18, 2015) (awarding $10,000 in TCPA case), *aff'd*, 639 F. App'x 880 (3d Cir. 2016); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 U.S. Dist. LEXIS 25595, at *12 (D. Mont. Feb. 11, 2015) (approving $20,000 incentive award in TCPA class settlement); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464, at *4-5 (S.D. Ind.

Plaintiff is reasonable and should be approved.

Thus, the fees, expenses, and incentive award sought are fair, reasonable and support approval.

## IV. CONCLUSION

This Settlement provides substantial benefits for all Settlement Class Members, it was negotiated at arm's length by experienced counsel after sufficient discovery and litigation, and there are no objections to any portion of the Settlement. Thus, it easily falls within the range of possible approval.

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: **(1)** grant the Settlement final approval; **(2)** grant Class Counsel's request for an award of attorneys' fees equal to $1,602,000, which represents 36% of the net Settlement Fund after administration costs are deducted, plus $40,150.43 in out-of-pocket expenses they incurred litigating the case for the class; and **(3)** grant Plaintiff a class representative service award in the amount of $10,000. The draft Final Approval Order is attached to the Agreement and is also attached hereto as **Appendix 4**.

Dated: September 7, 2022

Respectfully Submitted,

THOMAS GEBKA, individually and on behalf of all others similarly situated, Plaintiffs

By: /s/ Keith J. Keogh

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603

---

Nov. 20, 2012) (approving $25,000 incentive award over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12-13 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826-CIV-ZLOCH, 2015 U.S. Dist. LEXIS 179532, at *8-9 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA settlement).

(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com
tkuyper@keoghlaw.com

*Attorneys for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 7, 2022, I caused a copy of the foregoing ***Plaintiff's Motion for Final Approval of Class Action Settlement and Supporting Memorandum*** to be served upon all counsel of record via electronic filing using the CM/ECF system.


   /s/ Keith J. Keogh   

133703